**UNITED STATES v. REESE et al.**

**PEOPLE OF STATE OF ILLINOIS v. UNITED STATES et al.**

No. 8035.

Circuit Court of Appeals, Seventh Circuit.

Nov. 23, 1942.

Jacob Shamberg, Thos. J. Courtney, State's Attys., Marshall V. Kearney, and Francis S. Clamitz, Asst. State's Attys., all of Chicago, Ill., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch and Arthur Manella, Sp. Assts. to the Atty. Gen., J. Albert Woll, U. S. Atty., and Clarence W. Beatty, Jr., Sp. Asst. to the U. S. Atty., both of Chicago, Ill., for appellee.

Before EVANS, KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

This appeal presents an issue as to the respective priorities of liens for taxes of the United States and of the state of Illinois upon the property of Nelson K. Reese, bankrupt July 3, 1936, his estate being thereafter administered in the District Court. Each sovereignty sought to foreclose its lien and the causes were consolidated for hearing. The District Court assigned priority to the government's claim for income taxes over the state's for real estate taxes and from this adjudication the latter appeals.

The state tax is that upon the bankrupt's real estate for the years 1930 and 1931; that of the government is upon his income for various years merged in an assessment filed by the Collector of Internal Revenue on December 7, 1931. Thenceforth the government had a lien upon the bankrupt's property by virtue of the Internal Revenue Act. 26 U.S.C.A. Int.Rev. Code, §§ 3670, 3671, 3672.

The claim of the state arises by virtue of section 238, c. 120, Smith-Hurd Rev.Stats.1935, Section 238, Chapter 120 of the Illinois Revised Statutes, as follows: "The taxes upon real property * * * shall be a prior and first lien on such real property, superior to all other liens and incumbrances, from and including the first day of April in the year in which the taxes are levied until the same are paid. * * *" Thus the taxes became a "first and prior" lien upon the real estate on April 1 of the respective years. The amount to be paid and secured by the lien, however, was not determined as to 1930 until December 28, 1931, and as to 1931, until February 5, 1933.

The District Court found the lien of the government, which attached in a specific amount in December, 1931, entitled to priority over the liens of the state which had attached in April, 1930 and 1931, in view of the fact that the taxes due the state

468

were uncertain as to amount at all times prior to the date of accrual of the government's lien in December, 1931. The state now insists that its lien attached on April 1 preceding that of the government, and was specific, in that it covered the real estate of the landowner taxed and that, while inchoate, all the world was bound to have notice of it and to know that it would be fixed in amount by later assessment by the proper officials.

 The nature of the state lien is a state question. Spokane County, Washington v. U. S., 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621. Under provisions of the Illinois statute, taxes upon real property are prior and first liens, superior to all other incumbrances after "the first day of April in the year in which the taxes are levied until the same are paid." Under pertinent Illinois decisions it is determined that this statute creates a prior and first lien although the amount of taxes is not fixed till later, dating from April 1. The amount determined later is secured by the lien thus brought into existence prior to assessment. People ex rel. McCullough v. Deutsche Gemeinde, 249 Ill. 132, 138, 94 N.E. 162; Almy v. Hunt, 48 Ill. 45; Morrison v. Moir Hotel Co., 204 Ill.App. 433. And the Supreme Court has recognized the finality of this ruling in Osterberg v. Union Trust Co., 93 U.S. 424, where it said at 428, 23 L.Ed. 964, "The taxes for 1875 were, at the date of the decree, a subsisting lien upon the mortgaged property. * * * A lien for taxes * * * attaches to the res without regard to individual ownership, and when it is enforced by sale, pursuant to the statute prescribing the mode of assessing and collecting them, the purchaser takes a valid and unimpeachable title."

Construing a similar statute in U. S. v. State of Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327, the court held that when the government purchases property subject to a state lien for unliquidated and undetermined taxes, it takes the property subject to a lien for the taxes to be fixed later, using this language at page 280 of 313 U.S., on page 1013 of 61 S.Ct., 85 L.Ed. 1327: "The State thus undertakes to create an inchoate lien upon the land as of the tax day, a lien which is to be effective for the amount of the taxes for the ensuing year as these are fixed by the defined statutory method. This lien by the state law is made effective not only as against the owners on the tax day but also as against subsequent mortgagees and purchasers. * * * We find nothing in the Federal Constitution which invalidates such a statutory scheme. Subsequent lienors and purchasers have due notice of the tax liability imposed as of the tax day and of the process of assessment, and that liability, when its amount is definitely ascertained, relates back to the day specified. * * * The lien in such a case, though inchoate on the day specified, and maturing when the extent of liability is ascertained by the statutory process, is similar in that respect, * * * to the lien of a transfer tax or duty upon the estate of a decedent which is effective although the amount is ascertained after death." And it is urged by the state that the same rule should apply where the government, though not a purchaser as in the case cited, is asserting a lien which has come into existence subsequently to attachment of the state's lien.

Ordinarily it would seem obvious that if a subsequent purchaser does not take free of an inchoate unliquidated tax statutory lien it would follow that a subsequent acquirer of a lien could not take free thereof. But this postulate obviously omits all consideration of the nature of the government's lien, of its constitutional power to levy and collect taxes and, finally, of the legislation which Congress has enacted pursuant to such power which has been declared valid by the Supreme Court. The Constitution, Article I, Section 8, provides that Congress shall have power to lay and collect taxes and to make all laws which shall be necessary and proper to carry its powers into execution. Early in our national history, Section 3466 (31 U.S.C.A. § 191) of the Revised Statutes was enacted, providing in part that "whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor * * * is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied." The constitutionality of this provision for priority of claims of the United States against insolvent debtors was established in an early day in United States v. Fisher, 1805, 2 Cranch, 358, 2 L.Ed. 304, and elaborated upon later in Lane County v. State of Oregon, 7 Wall. 71, 19 L.Ed. 101; U. S. v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705; U. S. v. San Juan County, Wash., D.C., 280 F. 120 and Stover v. Scotch Hills Coal Co., D.C., 4 F.2d 748.

We can only conclude from these and other decisions that in case of contemporaneous dates of liens on the same subject matter by both government and the state, the United States must have preference and that this priority extends to the lien now before us. This priority, said the court, in United States v. National Surety Co., 254 U.S. 73, 41 S.Ct. 29, 30, 65 L.Ed. 143, is "priority over all other creditors; that is, private persons and other public bodies." It "cannot be impaired or superseded by state law." United States v. State of Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 298, 67 L.Ed. 638. The right to its enjoyment arises from the power "to secure adequate public revenue to sustain the public burdens," as granted by the states to the national government in the constitution. Price v. United States, 269 U.S. 492, 46 S.Ct. 180, 181, 70 L.Ed. 373.

In Spokane County v. United States, supra, assessment for personal property taxes was made by the state in 1921 and 1922 before the receiver was appointed. The taxes and penalties due the United States were assessed in 1923 and became a lien from that date. The statute of the state provided that its taxes might be collected as a lien upon all real and personal property of the person assessed and claimed by seizure, distraint or other specific proceedings. The court concluded that the specific lien of the United States took priority over such prior inchoate statutory lien in favor of the state. In New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754, the taxpayer became insolvent; the state of New York filed a claim for franchise taxes due for the years 1921 to 1925 but not assessed or liquidated until after receivership was instituted. The United States filed its claim for taxes and the question submitted to the Supreme Court was whether priority accorded the government by the lower court was proper. The court upheld the power of Congress to give priority to the people of the United States although the debts thereby subordinated were due to the people of the state or its political subdivision, remarking that the hardship to the state, if there is any, is the necessary consequence of the supremacy of the laws on all subjects to which the legislative power of Congress extends. We learn from the opinion of the Court of Appeals (59 F.2d 979) that the New York statute under which franchise tax was assessed provided that the fran-

chise tax "shall be a lien and binding upon the real and personal property of the corporation * * * until the same is paid in full." Tax Law N.Y., Consol.Laws, c. 60, § 197. The Supreme Court commented that the lien thus created [288 U.S. 290, 53 S.Ct. 324, 77 L.Ed. 754] "is effective for many purposes, though its amount is undetermined." Continuing, the court announced: "The problem here is different. To hold that a lien has progressed to such a point as to be a warning to mortgagees and purchasers of a contingent liability, like a notice of lis pendens, is far from holding that, while the liability is unliquidated and unknown, the lien thus created is perfect and specific. By the terms of the hypothesis it is nothing of the kind. If the state were to stand upon the warning and omit to ascertain the debt, it would never be able to sell anything, for it would not know how much to sell. Against mortgagees and purchasers a lien perfected afterwards may take effect by relation as of the date of the inchoate lien through which mortgagees and purchasers became chargeable with notice.

"The doctrine of relation will not divest the United States of the preference that accrued when receivers were appointed."

In United States v. Texas, 314 U.S. 480, 62 S.Ct. 350, 351, 86 L.Ed. 356, the question presented was as to the respective priorities of the government's claim for gas tax and a similar one by the state. The Texas statute provided that the taxes "shall be a preferred lien, first and prior to any and all other existing liens * * * upon all the property of any distributor, devoted to or used in his business as a distributor, which property shall include refinery, blending plants, storage tanks, warehouses, office buildings and equipment, tank trucks or other motor vehicles, * * * and any other property * * * devoted to such use, and each tract of land on which such refinery, blending plant, tanks or other property is located, or which is used in carrying on such business." Vernon's Ann. Civ.St.Tex. art. 7065—7. Thus it will be seen that the state's lien had attached to the property of the insolvent used in his business. To that extent it was specific and, by virtue of the statute, a first lien and though the government did not perfect its lien for taxes until subsequent to the attachment of the state's lien, the court held that the government had priority saying: "The United States rests its asser-

tion of priority upon § 3466 of the Revised Statutes. Despite the contention of Texas to the contrary, that section clearly applies to this proceeding. As we recently remarked in United States v. Emory [314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315], § 3466 covers in terms the case of an insolvent debtor who has committed an act of bankruptcy. * * * Section 3466 mentions no exception to its requirement that 'the debts due to the United States shall be first satisfied.' * * * It is urged, however, that Article 7065a—7 [of the Texas law] by its own force creates a specific and perfected lien. Support for this contention is said to lie in the fact that the statutory lien purports to affect only the property of the distributor which is 'devoted to or used in his business as a distributor' rather than his property in general. This is thought to make the lien sufficiently specific. * * * With respect to this contention it may first be said that the property 'devoted to or used in his business as a distributor' is neither specific nor constant. But a more important consideration is that the amount of the claim secured by the lien is unliquidated and uncertain. * * * Consequently, while it was clearly intended by Article 7065a—7 to create a lien in favor of the state, we must conclude that of necessity it was nothing more than an inchoate and general lien. Certainly it did not of its own force divest the taxpayer of either title or possession. It could not become specific until the exact amount of the taxes due had been determined, and it could not be enforced without the assistance of the courts. Like the tax lien in New York v. Maclay, supra, it served 'merely as a caveat of a more perfect lien to come.' 288 U.S. at page 294, 53 S.Ct. at page 324, 77 L.Ed. 754."

The state attempts to distinguish these decisions from the issue now before us in the assertion that in Illinois the lien is specific in that it attaches to the real estate against which it is levied, that this is a tax lien in rem and attaches to a specific thing and that it is to be distinguished from "floating" "in personam" taxes such as personal property tax, gas tax or franchise tax. True there is ordinarily no statutory provision creating a lien for personal property tax; but, under the Texas statute, the lien attached to real estate and was as broad and mandatory and definite as that in Illinois involved in this controversy. Yet the Supreme Court held that by virtue

of the taxing power of the United States and legislation enacted in pursuance thereof, the government's lien, made specific by being of record, takes priority over an existing inchoate lien not liquidated or fixed in amount until after the government's lien attached. And the New York statute created just as mandatory a lien upon real estate as that created by Illinois statute, yet again the Supreme Court accorded the federal lien priority over the inchoate state lien.

The judgment is affirmed.