**UNITED STATES v. SAMPSELL et al.**

No. 10932.

Circuit Court of Appeals, Ninth Circuit.

Feb. 15, 1946.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, Leonard Sarner, and Muriel S. Paul, Sp. Assts. to Atty. Gen., and Charles H. Carr, U. S. Atty., E. H. Mitchell, Asst., Eugene Harpole, Sp. Asst. to Chief Counsel, Bureau of Internal Revenue, all of Los Angeles, Cal., for appellant.

Grainger & Hunt, of Los Angeles, Cal., for appellee Paul W. Sampsell.

Robert W. Kenny, Atty. Gen. of Cal., and John L. Nourse, Deputy Atty. Gen., for appellee State of California.

C. E. McDowell, McIntyre Faries, and Allan M. Carson, all of Los Angeles, Cal., for appellee Universal Consolidated Oil Co.

Before STEPHENS, BONE and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

The United States, deeming itself aggrieved by a judgment of the United States District Court adverse to its claim of priority as a lien holder upon a sum of money held in the Bankruptcy Court, appeals.

The El Camino Refining Company, a corporation, filed a petition for reorganization on May 12, 1942, under Chapter X of the Bankruptcy Act of 1898, c. 541, 30 Stat. 544, as amended by the Act of June 22, 1938, c. 575, 52 Stat. 840, 883, 11 U.S. C.A. § 501 et seq. It was adjudicated a bankrupt on March 27, 1943, and Paul W. Sampsell was appointed trustee in bankruptcy of the estate on March 27, 1943. On March 31, 1943, he was qualified and assumed the duties of that office. In conformity with the agreement of all lien claimants and the court, the assets of the bankrupt were sold and the net proceeds received in the sum of $19,927.85. In further conformity with the agreement in which all lien claimants joined, all claims of liens together with their priority as they existed before the sale were transferred to the fund realized, subject to the expenses of administration to be fixed by the court.

There are three lien claimants, whose claims together exceed the value of the assets of the estate.

(1) The State of California, by and through the California State Franchise Tax Commissioner, filed a claim for April 3, 1943, for corporate franchise taxes in the sum of $3,701.35 plus interest at 6% per annum from January 15, 1944, until paid. The taxes were for the years 1939 and 1940 accruing January 1, 1939, and January 1, 1940, respectively. The exact amount of the taxes was not fixed prior to the date of the commencement of these bankruptcy proceedings. The California law provides that such taxes (imposed by the Bank and Corporation Tax Act of the State of California, Deering, California General Laws, 1939 Supp., Act 8488) shall constitute a lien upon the real property of the taxpayer, the lien to have the same force, effect and priority as a judgment lien, and shall attach on the first day of the taxable year.

(2) The Universal Consolidated Oil Company, a corporation, filed a claim for

$11,234.78 plus interest based upon real property mortgage given as security for a promissory note, which was executed and delivered on January 19, 1941. The obligation of the note is for the principal sum of $8,444.08 with interest at the rate of 5% per annum from March 15, 1943, until paid, together with the provision for attorney fees. On May 10, 1943, the Referee made an order allowing to the mortgagee a secured claim upon the real property so mortgaged to the extent of the total indebtedness. The mortgage was recorded on May 3, 1941, in the Official Records of Orange County, California. The balance due upon the said note and mortgage, principal and interest, exclusive of attorney's fees, is the sum of $10,484.78 plus interest thereon thereafter at the rate of 5% per annum until paid. The claim under the mortgage was contested by the United States and after legal notice of hearing (§ 58 of Bankruptcy Act, 11 U.S.C.A. § 94), the sum of $750 was fixed by the court as reasonable compensation for legal services performed by the law firm of Faries & McDowell for the mortgagee in connection with the mortgage in the bankruptcy proceedings.

(3) The United States filed a claim on June 20, 1942, for gasoline taxes for a sum in excess of $20,000. The liens attached on several dates between January 6, 1942, and June 18, 1942, both dates being included, by virtue of the fact that the assessment lists of the Commissioner of Internal Revenue were received by the Collector at Los Angeles on those dates. Internal Revenue Code, §§ 3670, 3671, 3672, 53 Stat. 448–490, § 3412, 53 Stat. 413, 26 U.S.C.A.Int.Rev.Code, §§ 3412, 3670–3672. No lien claim was recorded for these taxes in the office of the County Recorder of Orange County, State of California, or filed for record in the Office of the Clerk of the United States District Court for the Southern District of California, within which jurisdictions the oil refinery plant was located. The government's lien arises by virtue of §§ 3670, 3671 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, §§ 3670, 3671. Section 3672 of the same Act, 26 U.S.C.A.Int.Rev.Code, § 3672, provides that no lien shall be valid as against a mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector.

Expenses of administration amounting to $6,929.83 were ordered to be paid out of the estate before any of the liens were to be paid.

The Referee, affirmed by the District Court, ruled that the liens were entitled to priority in the order in which they attached, and since the assets were insufficient to pay both the state's claim and the mortgagee's claim in full, the legality of the United States' claim, aside from the priority phase was not passed upon.

The appellant contends that the District Court erred in holding that the United States was not entitled to priority in payment for gasoline taxes out of the bankrupt estate over the claims of the State of California for franchise taxes, and of the Universal Consolidated Oil Company for interest and attorney's fees relating to its mortgage.

Three questions are presented for determination by this court:

"(1) Whether the District Court erred in holding that under § 67 of the Bankruptcy Act, 11 U.S.C.A. § 107, the liens of the United States for gasoline taxes were not entitled to priority in payment over the inchoate general liens of the State of California for franchise taxes.

"(2) Whether the District Court erred in allowing interest to the Universal Consolidated Oil Company on the principal sum due under its mortgage, subsequent to the date of adjudication in bankruptcy, or sale with the mortgagee's consent, of the mortgaged property free and clear of all liens.

"(3) Whether the District Court erred in subordinating the tax liens of the United States to the payment of attorney's fees and interest on the principal sum due under the mortgage to the Universal Consolidated Oil Company subsequent to the date of adjudication in bankruptcy."

The lien and priority claims of the United States are based upon §§ 3670–3672 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, §§ 3670–3672, for gasoline taxes due under § 3412(a) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 3412(a). In substance these sections provide that when a tax is not paid it becomes a lien, effective at the time the assessment list is received by the collector. It is provided that the lien shall not be valid against a mortgagee, pledgee, purchaser, or judgment creditor until notice of the lien is filed with certain local officials or with the clerk of the District

Court. The language of § 3672, however, has been interpreted to mean that a lien of the United States is inferior to all mortgage or judgment liens which were acquired prior to the date of recording or filing of the notice. See Fox v. Queens County Sales Co., Inc., D.C.N.Y.1931, 52 F.2d 794; Minnesota Mutual Life Insurance Co. v. United States, D.C.Tex.1931, 47 F.2d 942.

All requisites for the attachment of government's liens for gasoline taxes claimed on appeal were fulfilled prior to the filing of the petition on May 12, 1942. Specifically the issue deals with the relative priorities of the United States as a lien claimant and California as a lien claimant under the facts obtaining. The tax liens asserted by the State of California were inchoate as to amount, but were fixed and attached to the real property of the debtor on January 1, 1939, and January 1, 1940, both of these dates being prior to the time that the Federal tax liens attached to such property. See California Bank and Corporation Franchise Tax Act, Deering California General Laws (1939 Supp.), Act 8488, §§ 25, 29.

The government contends that since the state lien is general and inchoate that the United States lien being specific and perfect, arising at the times the assessment lists were received, was thereby given priority over the state lien. It is also contended by the government that § 3672 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3672, which requires recordation in certain instances does not defeat this priority since a state is not among the enumerated classes protected by the statute.

The California courts have held that even though the taxes are not fixed or payable until the assessment has been made, such subsequent assessment does not create the lien but is only a step in its enforcement. County of San Diego v. County of Riverside, 1899, 125 Cal. 495, 58 P. 81.

The determination of this controversy rests upon statutory construction. The statutes involved are the Bankruptcy Act and certain sections of the Internal Revenue Code, supra. In general, the lien claimants fall under § 67 of the National Bankruptcy Act of 1898, as amended by the Chandler Act of 1938, 11 U.S.C.A. § 107. This section provides, in substance and for purposes herein concerned, that statutory liens for taxes and debts owing to the United States or any State or subdivision thereof, created or recognized by the laws of the United States or of any State, may be valid against the trustee. Where these laws require the liens to be perfected in order to be valid against the trustee in bankruptcy and they are not perfected but arise before bankruptcy, they are valid if perfected within the time permitted by and in accordance with the requirements of the laws of the United States or of any state. There is nothing in the Bankruptcy Act or in the Internal Revenue Code §§ 3670–3672, 26 U.S.C.A. Int.Rev.Code, §§ 3670–3672, directly providing that perfected liens shall have priority over prior inchoate liens which is the claim of the government. We are of the opinion that the government can get no support of any kind from the statutes in aid of its position.

The cases cited by the government, with the exception of United States v. Reese, 7 Cir., 1942, 131 F.2d 466, do not involve bankruptcy proceedings and hence are not applicable in the instant controversy. It has been established that § 3466 of the Revised Statutes, 31 U.S.C.A. § 191, does not apply in bankruptcy proceedings so that the cases cited by the government, in holding that inchoate liens will not defeat the priority of the government's liens established by that section, do not control the instant case. Davis v. Pringle, 1925, 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974; Guarantee Title & Trust Co. v. Guaranty & Surety Co., 1912, 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706; Claude D. Reese, Inc., v. United States, 5 Cir., 1935, 75 F.2d 9. It has been stated that the statute fixing priority of claims of the United States has been superseded by the Bankruptcy Act in cases involving bankruptcy proceedings. The priority given the United States, however, was put back in the Bankruptcy Act by the 1926 amendment, but only as to debts due the United States under § 64, 11 U.S.C.A. § 104. Lien creditors come under § 67, 11 U.S.C.A. § 107, and are prior in right to taxes without a lien under § 64. Claude D. Reese, Inc., v. United States, 5 Cir., 1935, 75 F.2d 9. See also City of Dallas v. Ryan, 5 Cir., 1933, 62 F.2d 959.

In the case of In re Knox-Powell-Stockton, 9 Cir., 1939, 100 F.2d 979, a state inchoate tax lien was held valid under § 67 and superior to a United States unse-

cured tax priority claim under § 64. Section 64 does not give taxes of the United States or of a state priority of payment over valid existing liens under § 67, since such liens are not affected by the Bankruptcy Act. Section 67 applies against the United States just as it does against any creditor. A lien does not have to be a specific or perfected lien to come within the protection of § 67. The cases which have held that only perfected liens are given priority are within the § 3466 of the Revised Statutes, 31 U.S.C.A. § 191, but that section does not apply to bankruptcy proceedings, hence its all-inclusive effects do not cover the situation in this case. There is nothing new in the principle that a statutory lien need not be perfected. In Detroit Bank v. United States, 1943, 317 U.S. 329, 63 S.Ct. 297, 87 L.Ed. 304, a federal estate tax (under § 315(a) of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Acts, page 253) attached at the date of the decedent's death without the necessity of assessment, demand for payment, recordation or other procedure to perfect it against subsequent liens. See United States v. Alabama, 1941, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327.

■ The case of In re Van Winkle, D.C.Ky.1943, 49 F.Supp. 711, likewise holds that § 3466 of the Revised Statutes, 31 U.S.C.A. § 191, is not applicable in bankruptcy proceedings, saying that the section yields to the distribution scheme provided in the Bankruptcy Act. The court held that an equitable lien of a surety, upon payment of the claim against the bankrupt by the surety, may be related back to the date of the contract and assignment of the retained percentage to defeat the government's lien which arose prior to the date of actual payment, but was not prior to the date of the contract and assignment. There was no appeal from the decision. A lien against the property of a bankrupt recognized as valid by either federal or state law attaches to the property in the hands of the trustee after bankruptcy, unless invalidated by a provision in the Act. The trustee acquires no better title than the bankrupt himself had. See Bankruptcy Act, § 67, 11 U.S.C.A. § 107; City of Richmond v. Bird, 1919, 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543; In re Knox-Powell-Stockton, 9 Cir., 1939, 100 F.2d 979.

■ It has been held that § 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, does not defeat the priority for claims of the United States in *non-bankruptcy* proceedings, so that § 64 did not impliedly modify § 3466 of the Revised Statutes, 31 U.S.C.A. § 191, as applied in non-bankruptcy proceedings. United States v. Emory, 1941, 314 U.S. 423, 427, 62 S.Ct. 317, 86 L.Ed. 315. The resulting inference would be that § 64 of the Bankruptcy Act in general would eliminate such priority when inconsistent with the Act in bankruptcy proceedings. It has been clearly held that where § 3466 of the Revised Statutes, establishing priority of the United States, is inconsistent with another national act, the situation not being justly within the scope of § 3466 in view of the other act, § 3466 will not apply. Cook County Nat. Bank v. United States, 1882, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537 (National Bank Act); United States v. Guaranty Trust Co., 1930, 280 U.S. 478, 50 S.Ct. 212, 74 L.Ed. 556 (Transportation Act).

It is reasonable to assume that bankruptcy proceedings are of such a specialized nature that the Bankruptcy Act was intended to govern such a situation exclusively and unaffected by § 3466 of the Revised Statutes, 31 U.S.C.A. § 191. The Act was intended to set up a particular scheme of distribution not to be varied by exceptions found outside the Act, since to do so would interfere with a well ordered and efficient working Act. Section 3466 of the Revised Statutes would not even be useful by way of analogy as it sets up an all-over priority without exception governing a given set of circumstances, while the Bankruptcy Act has its own schedule of priorities intended to cover all situations within its terms and jurisdiction.

The case of United States v. Reese, 7 Cir., 1942, 131 F.2d 466, is not controlling here, since there was a failure in that case to consider the applicable provisions of the Bankruptcy Act, the governing statute, and also because it relies upon authorities which are inapplicable under the Bankruptcy Act.

■ There is nothing in the Internal Revenue Code, §§ 3670–3672, 26 U.S.C.A. Int.Rev.Code, §§ 3670–3672, providing for government priority over inchoate liens which antedate its own liens.

We are of the opinion that the requirements of recordation in the Internal Revenue Code, § 3672, 26 U.S.C.A.Int.Rev. Code, § 3672, are not applicable in the instant case. The true purpose of a recording provision is to give protection for

the future rather than over events which have already taken place in the past.

 The government claims that it was error to allow interest to the mortgagee subsequent to the date of adjudication in bankruptcy or sale of the mortgaged property, with its consent, and to subordinate the tax liens of the United States to such payments. The general rule holds that interest stops running upon secured and unsecured claims after a debtor passes into bankruptcy unless the estate is solvent. Brown v. Leo, 2 Cir., 1929, 34 F.2d 127; Sexton v. Dreyfus, 1911, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244. There is an exception, however, holding that the rule does not apply to debts or claims of secured debts after and during bankruptcy when the mortgaged property is sufficient to pay the principal and interest of the mortgaged debt. Wilson v. Dewey, 8 Cir., 1943, 133 F.2d 962. There is a conflicting view in Lerner Stores Corporation v. Electric Maid Bake Shops, 5 Cir., 1928, 24 F.2d 780, in which it was held that the interest does not run beyond the date of the filing of a petition in bankruptcy. The Lerner case, however, relies upon the Dreyfus case which would apply the rule only where the secured creditors had exhausted their security so that there is not enough to pay the debt and interest. See People's Homestead Ass'n v. Bartlette, 5 Cir., 1929, 33 F.2d 561. It has been held that interest runs on a secured debt after the date of filing the petition in bankruptcy, but that it ceases on the sale of mortgaged property free of liens, by reason of the fact that the sale in effect is an end of the proceedings. The duty of the trustee arises at such time to pay the claimant his debt. In re Stevens, D.C.Or.1909, 173 F. 842. The question was not determined as to what may happen if the trustee fails to make the payment at that time. The statement has been made in several cases that interest runs until payment is made. In re Hershberger, D.C.Pa.1913, 208 F. 94; San Antonio Loan & Trust Co. v. Booth, 5 Cir., 1924, 2 F.2d 590; Phoenix Building & Homestead Ass'n v. E. A. Carrere's Sons, 5 Cir., 1929, 33 F.2d 563; Sehon-Stevenson & Co. v. Union Trust Co., 4 Cir., 1940, 113 F.2d 968. The accrual of interest is a part of the debt to the mortgagee and should not be affected by bankruptcy. See In re Stevens, supra; San Antonio Loan & Trust Co. v. Booth, supra.

Judge Orr in the case of In re Torchia, D.C.Pa., 1911, 185 F. 576, 584 stated: "Interest is payable on the * * * mortgage to the date of payment of principal. * * * Having been transferred from the land to the fund realized by sale, they must be payable when and only when the fund is distributable; that is, when the referee under bankruptcy act first prepares a decree or order for distribution."

To prevent the running of interest upon a secured debt, when the security is sufficient to pay the debt and the interest, would in effect permit the bankruptcy proceedings to adversely affect the lien which is contrary to the provision in the Bankruptcy Act that a lien shall not be affected by the Act, § 67. See In re Stevens, supra, 173 F. at page 843.

 The lien of the mortgage arose prior to the lien of the government for taxes and is entitled to priority. The security is sufficient to pay the full debt and it was given to secure the debt plus interest as one entire obligation arising at the time of the execution and delivery of the mortgage. It should not be broken down into separate parts. Nor is it necessary to make use of the doctrine of "relation back" to make after accrued interest a part of the lien of the mortgage. See Security Mortgage Co. v. Powers, 1928, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236. The government made no objection to allowance for interest and attorney's fees until after determination of the cause in the District Court.

 The government contends that the United States tax liens were not to be subordinated to the attorney's fees awarded to the mortgagee. Attorney's fees are a part of the secured debt and are entitled to be collected as such. There is no claim that the fees in question are not made a part of the debt or that they are not secured by the same lien, but only that the principal then due on the mortgage at the time the government lien attached may not be increased by attorney's fees for services to be performed in the future by any doctrine of "relation back". There is no need, however, for such a doctrine to support a lien for attorney's fees. Attorney's fees as well as interest are provided for in the obligation and the reasoning which supports the interest claim applies in the provision for attorney's fees. In Security Mortgage Co. v. Powers, 1928,

278 U.S. 149, 156, 49 S.Ct. 84, 86, 73 L.Ed. 236, the attorney's fees were held to be a part of a mortgage debt even though they accrued after adjudication, the court saying, "The contingent obligation to pay attorney's fees was a part of the original transaction." See In re Gotham Can Co., 2 Cir., 1931, 48 F.2d 540.

Affirmed.