In re HAYNES.

No. 5222.

United States District Court
D. Kansas.

Feb. 9, 1948.
March 25, 1949.

380

Randolph Carpenter, U. S. Atty., Topeka, Kan., Eugene W. Davis, Asst. U. S. Atty., Topeka, Kan., Philip A. Dergance, Asst. U. S. Atty., Topeka, Kan., for the United States.

Grover Pierpont, Wichita, Kan., for Trustee.

Eli Eubanks, Wichita, Kan., James D. Dye, Wichita, Kan., for the Bankrupt.

MELLOTT, Chief Judge.

The bankrupt has petitioned the court to review two orders of the Referee: (1) Holding that the United States should be allowed interest on its tax claims to the date of payment; and (2) that the United States is entitled to collect from the bankrupt insurance contribution tax imposed by Section 1400, Title 26 U.S.C.A. and withholding taxes imposed by Section 1622 of the same title on the Victor Manufacturing Corporation, of which bankrupt was one of the organizers, a stockholder, director, president and manager, the corporation having been adjudicated a bankrupt and the amounts not being collectible from it.

■ As to the first question, the Referee obviously resolved the issue in favor of the United States on the authority of Davie

v. Green, 1 Cir., 133 F.2d 451, the question not having been passed upon by the Court of Appeals for this (the Tenth) Circuit. The Court of Appeals for the Second Circuit had taken the view, in Saper v. City of New York, 168 F.2d 268, and Carter v. United States, 168 F.2d 272, that interest should be allowed only to the date of bankruptcy. After briefs were filed in this case, certiorari was granted by the Supreme Court. Decision was therefore deferred by this court until the Supreme Court ruled. The question has now been decided, City of New York v. Saper, Trustee, 336 U.S. 328, 69 S.Ct. 554. The holding of the Referee on this issue must be reversed and it is so Ordered.

■ The basic facts pertaining to the second issue are not seriously in dispute and are shown in the Referee's findings No. 4 to 7, both inclusive. The Referee concluded that taxes assessed against the corporation, in the absence of any showing by the United States that it, at any time during 1944, had sufficient funds on hands to pay them, could not be collected from the bankrupt, president of the corporation. This ruling is not contested by the Government and is not now in issue.

The amounts presently in issue consist of income taxes withheld from wages of employees from April 1, 1944, through November 22, 1944, aggregating $7,209.09, and "Federal insurance contributions payable under I. R. C. 1400", during the same period of time in the aggregate amount of $565.81. The Referee held that while the evidence was indefinite as to whether the corporation had had in its possession and under its control the withholding taxes in issue "the presumption must necessarily be that since the corporation met its payroll that it received and had in its possession and under the control of its officers the Withholding Taxes * * *." He therefore concluded that "if the officer of the corporation had in his hands or under his control the funds that had been set apart for the purpose of paying the tax and appropriated such funds to some other purpose that he acts 'willfully'" within the meaning of the applicable statute and made himself and his estate liable for such taxes.

The bankrupt does not contend that the claim of the United States is barred as a penalty by Section 93, sub. j, of the Bankruptcy Act. 11 U.S.C.A. That section allows "the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby * * *." The government did not receive the taxes from the bankrupt corporation; so a pecuniary loss was sustained.

I. R. C. Section 2707, 26 U.S.C.A. § 2707, so far as pertinent to the question here involved reads as follows:

"(a) Any person who willfully fails to pay, collect, or truthfully account for and pay over the tax imposed by section 2700 (a), or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty of the amount of the tax evaded, or not paid, collected, or accounted for and paid over, to be assessed and collected in the same manner as taxes are assessed and collected. No penalty shall be assessed under this subsection for any offense for which a penalty may be assessed under authority of section 3612.

"(d) The term 'person' as used in this section includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

The bankrupt places his chief reliance upon United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 and Hargrove v. United States, 5 Cir., 67 F.2d 820. Both cases were criminal prosecutions for income tax evasion. In United States v. Murdock many cases are cited and the court discusses at some length the meaning of the word "willful." It recognizes that the word has many meanings; but the conclusion is reached that, as a general rule, when used in a criminal statute, the word contemplates something more than an intentional, knowing, violation. The act should be one done with a bad purpose, without justifiable excuse, stubbornly, obstinately, or with careless disregard of whether the actor has the right so to act. The court said [290 U.S. 389, 54 S.Ct. 226]: "Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct." If this were a criminal prosecution the jury, of course, would be instructed along the line indicated.

But the present issue is not whether the president of the corporation had been guilty of a crime—a misdemeanor under I. R. C. 145(a) or a felony under I. R. C. 145(b), Title 26 U.S.C.A. § 145. It is whether his conduct had been so willful as to make him liable for the civil sanction prescribed by the Congress to insure that the tax withheld by a corporation would be applied as required by law rather than being dissipated. The referee took the view that the word "willfully", as used in the applicable statute, did "not mean wicked design but rather that the person acts knowingly and intentionally." He thought that Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 supported that conclusion, adverting, in his opinion to the language used by the court, 317 U.S. at page 497, 63 S.Ct. at page 367, 87 L.Ed. 418,—"willful * * * is a word of many meanings, its construction often being influenced by its context." The view taken by him is somewhat suggested also by Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917, which held that the civil sanction for fraud under I. R. C. 293(b), 26 U.S.C.A. § 293, could be exacted even though the taxpayer had been acquitted of a criminal charge based upon essentially the same state of facts. This court cannot hold, and declines to hold, that the referee erred in his conclusion that "if the officer of the corporation had in his hands or under his control the funds that had been set apart for the purpose of paying the tax [and finding to that effect has been made] and appropriated such funds to some other purpose * * * (then) he * * * (acted) "willfully.'"

382

In view of the conclusion which has been reached, that the referee's holding on this issue should not be disturbed, it is unnecessary to discuss the possible applicability of the "trust fund" theory, as implied from Title 26 U.S.C.A. § 3661. Except as otherwise stated herein the findings of fact and conclusions of law made and reached by the referee are approved.

### Referee's Finding of Fact, Conclusion of Law and Memorandum Upon Tax Claims of the United States

On the 27th day of October, 1947, the claim of the United States to which objection had been filed came up for hearing, the trustee, Judge Pierpont, appearing in person, the bankrupt appearing by Eli Eubanks and James D. Dye and the United States appearing by Eugene Davis and Phillip Dergance.

There upon it was agreed in open court that the question involved herein be submitted to the court upon the transcript of the record, description as follows:

The first hearing was on August 10, 1945, before Referee Harry C. Castor, held in his office in Wichita.

The second hearing involving a certain phase of the bankrupt matter, the hearing was before Honorable Guy T. Helvering, held in the Federal Court Room in Wichita, Kansas on January 24, 1946.

The third hearing was before Mr. Castor, the Referee, at his office in Wichita, under date of May 10, 1946, and

The fourth hearing was also before Mr. Castor, Referee, held at the Federal Court House under date of July 9, 1946.

The transcripts are all available, and I think are filed with the court and are now available, having all been transcribed, the testimony of the witnesses having been reduced by court reporter and are now on file. In addition to the transcripts of testimony heretofore referred to, the attorneys for the bankrupt would refer the court to the two briefs now on file in the case, which were heretofore filed with the Referee Harry C. Castor, the first being entitled Memorandum brief in opposition to the Government's claim for penalties, and the second being entitled Memorandum Brief and Argument on Question of Jurisdiction of Bankruptcy Court to Hear and Determine Amount and Legality of Government's claims for Penalties and Taxes.

The Referee: The case has been submitted on the transcript of the testimony above described and the brief of the bankrupt. It Is Ordered that the United States have until December 1st to file their reply briefs, and the bankrupt's attorneys are given until December 15th.

Mr. Dye: It is stipulated that the claim of the Government for income taxes of the Bankrupt for the taxable period 1945 together with penalty and interest aggregating $13,471.75 is to be reduced by the amount of $7,319.39, leaving a balance due and allowable on said claim of $6,152.36, as evidenced by the letter of the Treasury Department, dated June 19, 1947, under the signature of Frank E. McMullan, Deputy Collector in Charge, as contained in said file.

It is further agreed that the court shall determine the amount of interest that may be charged on said claim, it being the contention of the United States that the Government is entitled to interest on $6,048.71 thereof from September 1, 1946 through September 19, 1946 at six percent, and interest on $6,152.36 from September 20, 1946 to date of payment.

The parties to this controversy having submitted their briefs, the court finds as follows:

1. The voluntary petition in bankruptcy was filed in this case July 13, 1945. Petitioner was adjudged a bankrupt July 26, 1945. The First Meeting of the Creditors was held on August 10, 1945, and Grover Pierpont was elected and has qualified as trustee of the estate. The claims of the United States involved in this controversy were filed within six months of August 10, 1945.

2. At the time the petition was filed there was due and owing the United States by virtue of personal income taxes the sum of $6,048.71 with interest as provided by the law.

3. At the time the petition was filed, in addition to the taxes set out in finding num-

ber two, there was due the United States from the bankrupt taxes in the following amount:

Federal Insurance Contributions (26 U.S.C.A. § 1400 et seq.) from April 1 through June 30, 1945 in the basic amount of...................$150.33
Federal Unemployment taxes (26 U.S.C.A. § 1600 et seq.) for the period from January 1, through June 30, 1945 in basic amount of $469.73

Total ...................................$620.06

4. The Victor Manufacturing Corporation, a corporation, was adjudged a bankrupt about April 1, 1945, in case No. 5217 hereinafter called "Corporation". The bankrupt was, one of the organizors, stockholder, director, president and manager of the Corporation. During the year 1944 the Corporation was engaged in the manufacture of bolts and other equipment used in the construction of airplanes. It commenced business with very little capital and was kept going by virtue of loans made to it by the Reconstruction Finance Corporation and others.

5. During the year 1944 the corporation was insolvent and at no time had sufficient funds to meet and pay its current obligations and failed to pay taxes then accruing in the following sum:

Income Taxes (Withholding) to be withheld from wages under I.R.C. 1621, 26 U.S.C.A. § 1621:
April 1, through June 30, 1944  $3,588.83
July 1, through Sept. 30, 1944   3,457.61
October 1, through Nov. 22, 1944   162.65

$ 7,209.09

Federal Insurance Contributions payable under I. R. C. 1400, 26 U.S.C.A. § 1400:
4-1-44 thru 6-30-44  $ 221.21
7-1-44 thru 9-30-44     274.51
10-1-44 thru 11-22-44    70.09

565.81

Federal Insurance Contributions payable under I.R.C. 1410, 26 U.S.C.A. § 1410:
4-1-44 thru 6-30-44  $ 221.21
7-1-44 thru 9-30-44     274.51
10-1-44 thru 11-22-44    70.09

565.81

Federal Unemployment Tax payable under I.R.C. 1600, 26 U.S.C.A. § 1600:
1-1-44 thru 11-22-44  $3,169.18

$ 3,169.18

$11,509.89

6. These taxes were regularly assessed against the corporation but there were no funds in the bankruptcy estate of the corporation to pay them. The bankrupt in this case was one of the officers of such corporation whose duty it was to collect, where collection was necessary, and pay the taxes to the United States.

During the year 1944, the corporation filed its tax statements in due form but failed to make the payments set out herein. During this time the bankrupt held conferences with officers and agents of the United States and the Reconstruction Finance Corporation trying to work out means and measures to keep the corporation going and if possible pay its taxes.

7. During a part of this time the Reconstruction Finance Corporation controlled and directed the disbursement of the funds of the corporation. There is no showing in the testimony that the corporation at any time during the year 1944 had sufficient funds to pay the "Federal Insurance Contribution Taxes" levied under section 1410 or the "Federal Unemployment Taxes" levied under section 1600. The evidence is indefinite as to whether the corporation had in its possession and under its control the Withholding Taxes but the presumption must necessarily be that since the corporation met its payroll that it received and had in its possession and under the control of its officers the Withholding Taxes, and the Court so finds.

Memorandum of Opinion

The court believes the reasons which impel it to reach the conclusion hereinafter set forth should be briefly stated.

The only question involved as to the personal taxes set out in findings numbers two and three—is whether interest is collectable to date of payment. The court feels impelled to follow the decision in the Burch case, D.C., 89 F.Supp. 249, on the interest question. At the time it was written the court had before it the decision of the Southern District of New York. In re Union Fabrics, D.C. 1947, 73 F.Supp. 685. It is in our judgment that the court will not be justified in holding that claims of the United States for taxes should only bear in-

384

terest to date of bankruptcy until the statute has been amended. 11 U.S.C.A. § 93, sub. j.

The United States bases its claim to recover the taxes levied and assessed against the corporation on section 26 U.S.C.A. § 2707 (a). This requires construction of this statute.

This statute is made a part of the "Federal Insurance Contribution Act" by reference, 26 U.S.C.A. § 1430, which among other things provides that "All provisions of law, * * * shall, insofar as applicable and not inconsistent with the provisions of this subchapter." Subchapter A, 26 U.S.C.A. §§ 1400 to 1432, provides for a withholding tax to be collected by the employer of the tax-payer who is the employee and such tax is deducted from his wages. Sections 1400, 1401. This subchapter further provides for a direct levy on the employer. Section 1410. Subchapter C, 1600 to 1610, known as the "Federal Unemployment Tax Act" provides only for the levy of a direct tax against the employer. Section 1600. It however incorporated by reference insofar as it is not inconsistent with the Act, Section 2700. Section 1610.

Sections 1622 to 1627 inclusive provides that the employer withhold from the employee income taxes and pay the amount so withheld to the United States. It also provides, section 1627, that "All provisions of law, * * * with respect to the tax imposed by section 1400 shall, insofar as applicable and not inconsistent with the provisions of this subchapter, be applicable with respect to the tax under this subchapter."

Section 2707 so far as pertinent to the question here involved is as follows:

"(a) Any person who willfully fails to pay, collect, or truthfully account for and pay over the tax imposed by section 2700 (a), or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty of the amount of the tax evaded, or not paid, collected, or accounted for and paid over, to be assessed * * * in the same manner as taxes are assessed and collected. No penalty shall be assessed under this sub-section for any offense for which a penalty may be assessed under authority of 3612. * * *

(d) The term 'person' as used in this section includes an officer or employee of a corporation * * * who as such officer, employee, or member if under a duty to perform the act in respect of which the violation occurs."

The trustee contends that section 2707 can not be enforced against this estate because it provides for a penalty. It is well settled that the Bankruptcy Act, 11 U.S.C.A. § 93, sub. j, would prevent the enforcement of this claim if the claim is in fact a penalty and not pecuniary.

The determination of whether the statute is imposing a penalty or provides for the collection of a pecuniary loss is not without its difficulties. The statute uses the word "penalty" and if accepted literally, the contention of the trustee would prevail. In determining whether a claim is barred by the Bankruptcy Act because of its penal nature we think that it is the duty of the court, where there is an ambiguity, to go back of the statute and determine the effect of the obligation imposed. United States v. Childs, 266 U.S. 304, 305, 45 S.Ct. 110, 69 L.Ed. 299; 50 Am.Jur. 290.

The purpose of this statute is not to punish but to secure the collection of a fund that has passed into the hands of the employer, which is in the nature of a trust fund, the employer acting as a collecting agency for the United States. This statute would have been just as effective without the use of the word penalty and for this reason it should be construed as making the managing officer of the corporation personally liable if he willfully fails to remit the funds that comes into his hands as such officer. We do not think the statute imposes a penalty not collectible against the bankrupt's estate.

There is a divergence of opinion between the parties as to the meaning of the word "willful" as used in this statute. We are well aware of the many meanings that the courts have placed on the word "willful". Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 367, 87 L.Ed. 418. In this case

the court said it "is a word of many meanings, its construction often being influenced by its contents". It is in our judgment that as the word is used in this statute it does not mean wicked design but rather that the person acts knowingly and intentionally. It would seem therefore that if the officer of the corporation had in his hands or under his control the funds that had been set apart for the purpose of paying the tax and appropriated such funds to some other purpose that he acts "willfully".

The more serious question in this case to our mind is whether the statute has any application whatever to a direct tax levy. The statute as originally enacted was intended to apply only to withholding taxes. Such was the nature of Subchapter A of Chapter 25. The statute becomes a part of the "Federal Insurance Contribution Act" and the "Federal Unemployment Tax Act" by reference. Where a statute is incorporated into another statute by reference, the original statute is not broadened unless the express language of the incorporating statute clearly shows that the original statute was intended to be amended thereby. In view of the conclusion of facts reached herein, it is not necessary to determine this question in this case.

Under the facts as found there is no evidence to show that at any time during the year 1944 there were funds in the hands of the officers of the corporation that could be used to pay the direct levy. The officers of the corporation in the absence of a showing of fraud or misconduct cannot be held responsible for the failure of the corporation to make money. They certainly cannot be charged with willfullness in the failure to pay the direct levy without a showing that they were in a position to make such payment and failed to do so.

On the other hand, since the officer is directed by the statute to deduct the withholding tax from the employee's wages on a percentage basis, the payment of wages to employees charges him with having in his hands the withholding tax.

We therefore conclude:

1. The United States is entitled to recover interest on the taxes set out in Findings Number Two and Three to the date of payment.

2. The United States is entitled to recover the Federal Insurance Contribution tax imposed by Section 1400 and the withholding taxes imposed by Section 1622.

3. The United States is not entitled to recover Federal Unemployment taxes imposed by Section 1600, or Federal Insurance Contribution taxes imposed by Section 1410.