Matter of Leland CAMERON, aka L. H. Cameron, dba Allied Aircraft Co., Bankrupt.

No. 69054.

United States District Court
S. D. California,
Central Division.

Oct. 1, 1958.

Quittner, Stutman & Treister, by George M. Treister, Los Angeles, Cal., for trustee.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Jack Roberts, Attorney, Internal Revenue Service, Los Angeles, Cal., for the Government.

YANKWICH, Chief Judge.

On November 14, 1955, a petition in involuntary bankruptcy was filed against Leland Cameron, also known as L. H. Cameron, doing business as Allied Aircraft Company.[1] On March 8, 1956, the debtor withdrew his Answer to the petition and consented to an Order of Adjudication.[2] On August 31, 1955, the District Director of Internal Revenue for the District of Los Angeles assessed withholding and federal insurance contribution taxes against the debtor for the second quarter of 1955 in the sum of $17,015.58. Notice of the assessment, with demand for the payment, was made on September 8, 1955. No payment was made at the time. On March 20, 1957, the sum of $3,251.08 was credited to this assessment; on July 9, 1958, the sum of $13,764.50 was credited, and, finally, the sum of $294.09 was credited on July 9, 1958, to accrued interest on the assessment.

The principal of the assessment has been paid, but on July 9, 1958, accrued interest in the sum of $2,453.64, representing interest which accrued from the date on which the petition was filed until the date of payment remained unpaid. A lien for the assessment was perfected before the filing of the petition.[3]

The District Director presented a claim for the entire sum which was known as Claim No. 139. The Trustee objected to the portion relating to the assessment of interest after the date of the filing of the petition. After hearing, on notice, the Referee made an Order dated August 8, 1958, overruling the objection of the Trustee, and allowing post-bankruptcy interest on the claim, to constitute a lien on the assets of the bankrupt. The Referee made findings embodying the facts we have summarized, which were stipulated. In a memorandum preceding the findings, the Referee expressed the view that a recent decision of the Court of Appeals for the Ninth Circuit,[4] which held that a secured creditor was entitled to interest to the date of payment, whenever the proceeds of the sale of the encumbered property are sufficient to pay not only the principal, but the post-bankruptcy interest as well, applied. He, therefore, upheld the contention of the Government, *reasserted here,* that the lien for taxes,[5] when perfected,[6] is of the

---

1. Bankruptcy Act of 1938, § 3; 11 U.S.C.A. § 21.

2. Bankruptcy Act of 1938, § 3, sub. a(6); 11 U.S.C.A. § 21, sub. a(6).

3. Internal Revenue Code of 1954, § 6323, 26 U.S.C.A. § 6323.

4. Palo Alto Mutual Savings & Loan Ass'n v. Williams, 9 Cir., 1957, 245 F.2d 77.

5. Internal Revenue Code of 1954, § 6321, 26 U.S.C.A. § 6321.

6. Internal Revenue Code of 1954, § 6323.

same character as a security, so as to entitle the Government to interest to the date of payment.

### I

### Interest on Claims in Bankruptcy

The determination of the matter calls for a brief examination of the problem of interest on claims in bankruptcy. Section 63, sub. a, of the Bankruptcy Act of 1938, 11 U.S.C.A. § 103, sub. a, which, in one form or another, has existed since the enactment of the first Bankruptcy Act, provides:

> "Debts of the bankrupt may be proved * * * upon (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest."[7]

One of the great innovations of the 1938 Act was to put claims of the United States and the States in the same class with others so far as proving and filing are concerned, with the exception that the Government of the United States or a State or subdivision thereof may obtain an extension of time.[8] The object of the section, as interpreted by writers, so far as interest is concerned, has been summed up in this manner:

> "A governmental or public claim can include interest in like manner and to the same extent as any other claim, but to no greater extent. It cannot include interest accruing after the filing of the bankruptcy or reorganization petition, even though it has been reduced to lien form."[9]

The Congress, in placing federal and state taxing bodies and other creditors on the same footing as to interest, gave effect to traditional doctrine which, for over a century and a half, in England and in the United States, disallowed interest in bankruptcy. The reason was stated by Mr. Justice Holmes in a leading case:

> "For more than a century and a half the theory of the English bankrupt system has been that everything stops at a certain date. Interest was not computed beyond the date of the commission. * * * The rule is not unreasonable when closely considered. It simply fixes the moment when the affairs of the bankrupt are supposed to be wound up."[10]

There has been no break in the continuity of this approach.[11] Significantly, in the last case,[12] the Court said as to Government tax claims:

> "Tax claims are treated the same as other debts except for the fourth priority of payment, § 64, sub. a, 11 U.S.C. § 104, sub. a, 11 U.S.C.A. § 104, sub. a, and the provision making taxes nondischargeable, § 17, 11 U.S.C. § 35, 11 U.S.C.A. § 35. But each of these sections is silent as to interest.
>
> "The long-standing rule against post-bankruptcy interest thus ap-

---

7. Bankruptcy Act of 1938, § 63, sub. a, 11 U.S.C.A. § 103, sub. a. For a resume of the legislative changes, see, Collier on Bankruptcy, 14th Ed., 1956, Vol. 3, §§ 63.01–63.02, pp. 1755–1762.

8. Bankruptcy Act of 1938, § 57, sub. n; 11 U.S.C.A. § 93, sub. n; Collier on Bankruptcy, 14th Ed., Vol. 3, § 63.26, pp. 1869–1870.

9. 2 Remington on Bankruptcy, 1956, pp. 224–225.

10. Sexton v. Dreyfus, 1911, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244.

11. American Iron & Steel Mfg. Co. v. Seaboard Airlines, 1913, 233 U.S. 261, 266–267, 34 S.Ct. 502, 58 L.Ed. 949; Vanston Bondholders Protective Committee v. Green, 1946, 329 U.S. 156, 163–165, 67 S.Ct. 237, 91 L.Ed. 162; In re Inland Gas Corp., 6 Cir., 1957, 241 F.2d 374, 379.

12. City of New York v. Saper, 1949, 336 U.S. 328, 330–332, 69 S.Ct. 554, 93 L. Ed. 710.

pears implicit in our current Bankruptcy Act." [13]

In the case in which this statement was made, the Court held that the City of New York could not claim interest on taxes beyond the date of bankruptcy. As the Bankruptcy Act of 1938 makes no distinction between State and federal taxes but groups them as claims,[14] the Courts of Appeals which have had occasion to apply this decision, have held that tax claims by the Government of the United States are in the same category and draw no interest beyond the date of bankruptcy.[15]

The Supreme Court, in denying certiorari in two of these cases, specifically referred to its ruling in the Saper case.[16] It is noteworthy also that in each of these cases, the Government attempted, *as it does in this case,* to have the courts confine the Saper case ruling to the specific situation existing in that case.[17] However, the Courts declined to do so and held that, by analogy, the principle applied not only to bankruptcy, but also to receiverships and reorganization proceedings. The Court of Appeals for the Second Circuit in the case just cited, speaking through Chief Judge Clark, said very emphatically:

"The question of the accruing of interest and tax penalties during bankruptcy had divided the courts, including different panels of our own court, until the case of City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, and other companion cases settled that such claims, whether federal or state, were not collectible in bankruptcy, including reorganization and arrangement proceedings. Thereafter we construed the meaning and intent of this principle to be that such claims could not thereafter be used to harass a reorganized corporation as it attempted anew to face the vicissitudes of business life. It is true that Sword Line v. Industrial Commissioner of State of New York, 2 Cir., 212 F.2d 865, certiorari denied 348 U.S. 830, 75 S.Ct. 53, 99 L.Ed. 654, specifically concerned a state claim; but the entire reasoning, based upon the Saper principle, was as completely applicable to federal as to state claims. See 30 N.Y.U.L.Rev. 716, n. 2, 718, n. 17. In our view interest and penalties did not accrue after the bankruptcy. Whether this or a rationale that they accrued, but were barred, see 54 Col.L.Rev. 1293; 30 N.Y.U.L.Rev. 558, 580–584, is the more appropriate, the result is the same. They are nonexistent; and proceedings for their collection are at best futile, at worst inimical to the future welfare of the newly reorganized corporation. In the Sword Line case there was an extensive and persuasive dissent advancing all the arguments which it seems the appellee here can eventually propound; but the denial of certiorari, 348 U.S. 830, 75 S.Ct. 53, 99 L.Ed. 654, terminated that claim and permitted our injunction against the state proceedings for collection to stand." [18]

In another of these cases, the logic of the application of the doctrine which denies interest after bankruptcy was defended in this manner:

13. City of New York v. Saper, supra, 336 U.S. at page 332, 69 S.Ct. at page 556, Note 12.

14. Bankruptcy Act of 1938, § 57, sub. n.

15. United States v. General Engineering & Mfg. Co., 8 Cir., 1951, 188 F.2d 80; United States v. Edens, 4 Cir., 1951, 189 F.2d 876; National Foundry Co. of New York v. Director of Internal Revenue, 2 Cir., 1956, 229 F.2d 149. And see, Vanston Bondholders Protective Committee v. Green, 1946, 329 U.S. 156, 163–165, 67 S.Ct. 237, 91 L.Ed. 162.

16. United States v. Edens, 1952, 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682; United States v. General Engineering & Mfg. Co., 1952, 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682.

17. See cases cited in Note 15.

18. National Foundry Co. of New York v. Director of Internal Revenue, supra, 229 F.2d at page 150. Note 12.

"We think that no implication reasonably can be drawn from the Saper case that tax claims have any different status in an arrangement proceeding under Chapter XI than they have in ordinary bankruptcies. The Supreme Court said in the Saper case, at pages 337–338, of 336 U.S., at page 559 of 69 S.Ct.: 'The Court of Appeals concluded that by the 1926 amendment and the Chandler Act, *Congress assimilated taxes to other debts for all purposes, including denial of post-bankruptcy interest*. We think this is a sound and logical interpretation of the Act after those amendments to §§ 64, sub. a, and 57, sub. n. Considered in conjunction with the general rule against post-bankruptcy interest as well as § 63's limitations of interest on other claims to date of bankruptcy, they compel our conclusion, already stated, that the statute as amended did not contemplate any exception in favor of tax claims.'

"It seems apparent that if the amended sections referred to by the Supreme Court, namely 64, sub. a, 57, sub. n and 63, are applicable to arrangement proceedings under Chapter XI, there can be no logical basis for a ruling that in such a proceeding a tax claim bears interest beyond the date when the debtor's petition is filed." [19] (Emphasis added.)

These decisions correctly interpret the nature of the Government tax liens against the historical background of the policy which disallows post-bankruptcy interest. The tax lien of the Government attaches to

"all property and rights to property, whether real or personal,"

belonging to the taxpayer.[20] It continues "until the liability for the amount so assessed is satisfied or becomes

unenforceable by reason of lapse of time." [21]

It is insisted that a distinction should be made between ordinary taxes and taxes which have been transmuted into a lien. It is argued that the tax lien created by these sections is *a specific lien,* so that the same rule as to interest should apply as the Court of Appeals for the Ninth Circuit applied in the Palo Alto case which the Referee followed.[22]

The cases which have used the word "specific" in designating the lien were cases involving claimed priorities between tax liens of the Government and liens of local taxing agencies. To overcome the contention that the liens of the Government were "floating", the Courts said that the liens were *specific* in the sense that, as of the date of the filing of proper notice, they *attach* to all the property owned by the taxpayer. One of the cases relied on at the argument shows clearly that the word "specific" was used merely to indicate that the lien, *although it attached to more than one parcel of property, is specific enough to have priority over other liens*. The language was:

"To say that the lien provided by this statute is a general lien on all the property of the taxpayer does not help in the solution of the problem presented; for a lien is not deprived of validity because it attaches to a number of pieces of property instead of to a single piece, nor is it for that reason to be subordinated to a junior lien attaching to a single piece of property. *When properly perfected, the lien under the statute constitutes a charge upon specific property of the taxpayer for the satisfaction of which that property may be sold under proceedings instituted for the purpose.* As said in Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311, 313,

---

19. United States v. General Engineering & Mfg. Co., supra, 188 F.2d at pages 81–82, Note 15.

20. Internal Revenue Code of 1954, § 6321.

21. Internal Revenue Code of 1954, § 6322, 26 U.S.C.A. § 6322.

22. Palo Alto Mutual Savings & Loan Ass'n v. Williams, supra, Note 4.

*'The Federal statutes create specific liens for taxes and as a corollary give a specific remedy for their removal and when such liens once attach, they may be lifted only as provided thereunder.' "* [23] (Emphasis added.)

■ These decisions merely give effect to the established doctrine that a Government tax lien *made specific by notice,* has priority over any other liens.[24] *They do not teach* that it is a specific encumbrance on a specific piece of property in the sense in which a mortgage or deed of trust is.

## II

### No Interest On Taxes, Liened Or Not

The determination of the matter before us must be made against the background we have just outlined, that, as a rule, the disallowance of interest is, and has been, traditionally the rule in bankruptcy. The exceptions to the rule are few. Interest will be allowed in bankruptcy or liquidation if (a) by reason of a change of affairs the estate can pay out the creditors in full and there is money left to pay interest;[25] (b) when income is produced from a security given by the bankrupt to the creditor, as interest on bonds, dividends on stock or rentals on mortgaged property.[26]

■ The Court of Appeals for the Ninth Circuit and others have added a new category, the instance where

"the estate is insolvent but the proceeds of the sale of the mortgaged properties are sufficient to pay post-bankruptcy interest to the secured creditor." [27]

The situation thus contemplated was intended to protect the creditor in his security which, on liquidation, produced enough to satisfy the encumbrance. And herein lies the real distinction between the situation which the Court had before it in that case and a tax lien.

An encumbrance is placed upon the property voluntarily by a debtor as security for his debt after agreement with the creditor. By doing so, the debtor authorizes not only the satisfaction of the debt out of the sale of the particular property, but agrees to the payment of any deficiency that might arise after the sale and that other property he may own may be subjected by execution to the payment of a deficiency judgment.[28]

23. United States v. City of Greenville, 4 Cir., 1941, 118 F.2d 963, 965. Similar language is used in United States v. Reese, 7 Cir., 1942, 131 F.2d 466, 470, where the Court states that " * * * the government's lien, *made specific by being of record*, takes priority over an existing inchoate lien not liquidated or fixed in amount until after the government's lien attached." (Emphasis added.)

24. People of State of New York v. Maclay, 1933, 288 U.S. 290, 53 S.Ct. 323, 77 L. Ed. 754; State of Michigan v. United States, 1943, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312; Cobb v. United States, 1949, 84 U.S.App.D.C. 228, 172 F.2d 277.

25. See, Ticonic National Bank v. Sprague, 1938, 303 U.S. 406, 410–411, 58 S.Ct. 612, 82 L.Ed. 926; Fujikawa v. Sunrise Soda Water Works Co., 9 Cir., 1946, 158 F.2d 490, 494; Littleton v. Kincaid, 4 Cir., 1950, 179 F.2d 848, 852–853, 27 A.L.R.2d 572; Note, 27 A.L.R. 2d 586. See the writer's opinion In re F. P. Newport Corp., D.C.Cal.1954, 123 F.Supp. 95, 99.

26. Palo Alto Mutual Savings & Loan Ass'n v. Williams, supra, 245 F.2d at page 79, Note 4. These exceptions have received general recognition. See Collier on Bankruptcy, 14th Ed., Vol. 3, § 63.16, pp. 1839–1844.

27. Palo Alto Mutual Savings & Loan Ass'n v. Williams, supra, 245 F.2d at page 79, Note 4. See, In re Macomb Trailer Coach, 6 Cir., 1952, 200 F.2d 611; In re Inland Gas Corp., 6 Cir., 1957, 241 F. 2d 374, 379–380.

28. California Civil Code, §§ 2947–2953; California Code of Civil Procedure, § 725a–730. See, also, California Code of Civil Procedure, § 580a (deficiency judgment). Judge Richard H. Levet of the Southern District of New York, in a case in which the Government sought both penalties and interest on taxes which had been liened, summed up the differences between a voluntary bi-lateral security on property which, when liquidated, produces enough to satisfy principal and interest, and the type of unilateral lien perfected pursuant to the Internal Revenue

In whatever legal proceeding the secured creditor takes to satisfy his debt, the debtor cannot, except in cases involving fraud, question *the validity* of the instrument or the amount of the debt which it was given to secure. *Prima facie*, at least, the presumption is that it was voluntarily given for a debt actually owed. At most, the question might arise about any deductions for payments made. So the instrument itself settles most of the problems as to genuineness, due execution and the amount of the debt. This is not so in the case of a tax lien. The tax lien is merely an assertion by the Government that so much tax remains unpaid. The filing of the lien does not determine the tax as against the taxpayer. And, in any subsequent proceedings, whether brought by the Government to foreclose the lien or by the taxpayer who pays the assessment and sues for a refund or enjoins the Government after liquidation or seizure, or by the Government of the United States when it institutes the action to collect, the validity of the entire assessment and its exact amount are justiciable questions.[29] Rightly. For otherwise, the taxpayer would be at the mercy of the humblest agent of the revenue service who capriciously levied an assessment. From long judicial experience, I know of assessments running into hundreds of thousands of dollars, which, after judicial inquiry, were found to have no foundation except a misinterpretation of the law by the officer levying the assessment concurred in by the Commissioner. So there are many cogent reasons for allowing post-bankruptcy interest in a case where a specific piece of property *is impressed* by the debtor with a mortgage or trust deed and *appropriated,* after mutual agreement between him and his creditor, to the payment of a specific debt, when, upon liquidation, a surplus exists. But there is no justification for a distinction between ordinary taxes and taxes which are made the subject of a lien, which comes into being unilaterally and may be disputed as to validity and amount by the taxpayer in administrative and judicial proceedings, warranting the courts to depart from the salutary principle of disallowing interest in bankruptcy, except in certain extraordinary instances.

Collier sums up very graphically the reason for assimilating the tax claim with all other claims, so far as interest is concerned:

"It seems, however, that the Act of 1938 should offer sufficient justification for assimilating the treatment of tax claims to that of other claims. That former § 64 [sub.] a singling out tax claims as claims *sui generis* has not been deleted may perhaps in itself not warrant the abandonment.

Code "upon all property and rights to property, whether real or personal", of the taxpayer (Internal Revenue Code of 1954, § 6321) in this manner:

"A general lien of this type is distinguishable from the specific security involved in those cases where the courts have seen fit to recognize the existence of an exception to the general rule that interest ceases to run on secured and unsecured claims as of the date of the filing of the petition in bankruptcy. The distinction lies in the fact that the specific security involved in the cases where an exception was found was usually the result of a voluntary transaction between the debtor and the creditor and the payment of interest was contemplated by the parties. This Court, therefore, is reluctant to extend the

application of the third exception to allow interest on a tax lien to the date of payment where the security consists of a general lien 'upon all property and rights to property, whether real or personal' belonging to the bankrupt." In re Lykens Hosiery Mills, Inc., D.C.S.D.N.Y.1956, 141 F.Supp. 895, 897–898.

29. See Internal Revenue Code of 1954, §§ 6211–6216, 26 U.S.C.A. §§ 6211–6216 *(relating to deficiency procedure);* §§ 6301–6303, 26 U.S.C.A. §§ 6301–6303 *(relating to the collection of taxes);* §§ 6331–6337, 26 U.S.C.A. §§ 6331–6337 *(relating to seizure and sales of property);* §§ 7401–7407, 26 U.S.C.A. §§ 7401–7407 *(relating to civil actions by the United States);* §§ 7421–7425, 26 U.S.C.A. §§ 7421–7425 *(relating to proceedings by the taxpayer).*

·of a practice that was not deviated from when the 'superpriority' granted by the Act of 1898 was transformed into a sixth priority. But the Act of 1938 went one step further. It deprived tax claims of their former immunity from destruction through failure to observe the statutory period of proof as provided in § 57 [sub.] n. Tax claims are now to be proved in the manner and time prescribed for other claims. Unless it is felt that their continued exception from dischargeability has any bearing on the question, this deliberate and fundamental change in conjunction with the elimination ·of former § 64 [sub.] a *would seem clearly to indicate that Congress is inclined to liken tax claims to other claims and subject them to the same rules. As to interest, this would entail the stopping of interest from the date of bankruptcy to the extent and with the qualifications discussed previously.*" [30]

### III

Comment On Some Decisions

Several district courts which have had before them the problem of interest on federal taxes reduced to liens have declined to see any distinction between them and any other taxes and have declined to allow post-bankrupt interest on them. As their reasoning accords with my own views, and with the general principles already outlined, brief quotations from some of them will be given with appropriate comment.

In a case arising in the District Court of Kansas, the Referee in bank-

ruptcy, *whose views were later adopted by the Court,* wrote:

"A statutory lien comes into existence at the instance of the lienor who sets in motion the statutory authority. *The lien is dependent |for its existence on a valid debt or obligation. The debt may survive the lien, but the lien cannot survive the debt. If the debt fails or ceases to exist, the lien is nugatory. The lien does not establish the amount of the debt. It cannot make an indebtedness legal that otherwise would be illegal.*

"The sole purpose of a penalty is to punish for a delinquency. This is especially true under the tax laws. The imposing of a penalty on a bankrupt estate is not a punishment of the delinquent but of the creditor—the innocent bystanders. It is contrary to every principle of American law that one person should be punished for the delinquency of another.

"If Section 57, sub. j of the bankruptcy act is set aside by the establishment ·of a lien, *then the estate may be wiped out, not by debts but by penalties.* If Section 57, sub. j is not enforcible against tax liens, what is to be done with Section 67, sub. c? The first makes a penalty disallowable, the second postpones the lien. If the first statute is nullified by an established lien, why is not the second?

"*It is my conclusion that the United States is not entitled to recover penalties, although they may be a part of an established lien.*" [31]

---

30. Collier on Bankruptcy, loc. cit., p. 1843.

31. In re Burch, D.C.Kan.1948, 89 F. Supp. 249, 254. The ruling of the Referee disallowed the penalty, but allowed interest. This view was followed by Chief Judge Arthur J. Mellott of the District of Kansas in In re Haynes, D.C. Kan.1949, 88 F.Supp. 379, 383.

In our view, the imposition of post-bankruptcy interest is a penalty. As stated by Judge John Bright in In re

Union Fabrics, D.C.N.Y.1947, 73 F.Supp. 685, 688:

"*The allowance of interest to the date of payment,* an accumulation caused solely because of delays necessitated by the successful efforts of the Trustee to protect and increase the estate, *seems to me to be entirely inequitable, and to result in an unbalance of equities between the several creditors rather than a 'balance of equities' which the Su-*

(Emphasis added.)

In another case, Chief Judge Wallace S. Gourley of the Western District of Pennsylvania, sums up the principle against allowance of post-bankruptcy interest and applies it to tax claims reduced to liens in this manner:

"As a matter of public policy the courts have recognized that as a general rule, after property of an insolvent passes into the hands of a receiver, interest is not allowed against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate. Thomas v. Western Car Co., 149 U.S. 95, 13 S.Ct. 824, 37 L.Ed. 663; Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162.

"The government has concurred in the view that tax claims against a bankrupt bear interest only until the date of bankruptcy, but seeks to distinguish between those tax claims reduced to liens and tax claims not reduced to liens, *advancing the argument that the general rule of interest herein enunciated has application only to tax claims not reduced to liens.*

"*I find no basis in law or policy for this arbitrary distinction. A metic-*

*ulous examination of the authorities reveals no such tortured classification.*" [32] (Emphasis added.)

More recently, the same Pennsylvania District Court applied these principles to penalties.[33] And a Texas District Court has concurred in this view.[34]

## Summary and Conclusion

The general rule against allowance of interest on all claims in bankruptcy, including tax claims, after the filing of the petition, has sound historical considerations dating back to more than a century and a half in English and American practice, as the preceding discussion shows. It is grounded on the principle that

"* * * delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate." [35]

■ "Equality of distribution" between creditors equally situated is the aim of the bankruptcy law.[36] A differentiation between simple taxes and liened taxes is not warranted by the present bankruptcy statute which, with few exceptions, places all claims on an equal basis as to interest and rejects penalties, except where actual pecuniary loss has been sustained.[37]

As stated in the New York case already referred to:

*preme Court says is the touchstone of each decision.* It would do more. As I have written above, *it would require the general creditors to pay the penalty caused by the delay necessitated to preserve and protect the estate.*" (Emphasis added.)

32. In re Industrial Machine & Supply Co., D.C.W.D.Pa.1953, 112 F.Supp. 261, 263. A similar ruling was made in the Southern District of New York in In re Lykens Hosiery Mills, discussed supra Note 28.

33. In re Hankey Baking Co., D.C.W.D. Pa.1954, 125 F.Supp. 673.

34. In re C. J. Dick Towing Co., D.C.Tex. D.C., 161 F.Supp. 751.

35. Thomas v. Western Car Co., 1893, 149 U.S. 95, 117, 13 S.Ct. 824, 833, 37 L.

Ed. 663. See Tredegar Co. v. Seaboard Air Line Ry., 4 Cir., 1910, 183 F. 289, 290. See American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 1914, 233 U.S. 261, 266, 34 S.Ct. 502, 504, 58 L. Ed. 949, where the Court said:
"As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss."

36. Sampsell v. Imperial Paper Corp., 1941, 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293; American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., supra, 233 U.S. at page 266, 34 S.Ct. at page 504. Note 35.

37. Bankruptcy Act of 1938, § 57, sub. j; 11 U.S.C.A. § 93, sub. j. And see, Bankruptcy Act of 1938, § 67, sub. b; 11 U.S.C.A. § 107, sub. b.

"The underlying claim upon which the tax lien is predicated in the case at bar is expressly barred by Section 57, sub. j for the protection of other creditors whose interests would be adversely affected by the withdrawal of assets from the bankrupt estate. *The fact that the penalties are covered by a lien does not alter the conclusion that such penalties are not allowable in this proceeding.*" [38] (Emphasis added.)

A contrary view would result in the anomaly of the Government being, in many cases, the sole creditor who not only is paid its debt in full, but receives post-bankruptcy interest, while other creditors, to whom the major part of the debts is owed, receive little or nothing. In the case of the ordinary business firm, the lienable tax claims, such as withholding taxes and the like, which are paid periodically, would constitute a small amount of the debts owed.[39]

Because the Government's lien attaches to all the debtor's property, a situation might arise where *the sale of all* the debtor's property might not bring more than the amount of the Government's tax lien, swollen by interest. This would mean that the Government would become the preferred creditor, not by reason of any statutory command, but by reason of a judicial interpretation which, disregarding historical and equitable considerations, would allow the Government to augment its debt by adding interest to the time of payment. Absent an explicit Congressional direction, we should avoid, in bankruptcy, a construction which would make such inequality possible. The Government is given a preferred position as to its tax claims by statute.[40] We should not better it by extending it to interest by judicial *fiat*.[41]

The Order of the Referee dated August 8, 1958, allowing interest after the filing of the petition in the sum of $24,-

---

38. In re Lykens Hosiery Mills, supra, 141 F.Supp. at page 899. Note 28. See Gardner v. State of New Jersey, 1947, 329 U.S. 565, 579–581, 67 S.Ct. 467, 91 L.Ed. 504 and Sword Line, Inc., v. Industrial Commissioner of State of New York, 2 Cir., 1954, 212 F.2d 865, 868–870, *which recognize the traditional control of the bankruptcy court over interest not originating in contract and the right to deny it, if inequitable to other creditors.*

39. The condition of affairs in this case illustrates the point here made. The debtor listed as taxes due the United States, $38,853.13. The claim actually filed by the Government for all taxes was $41,397.21. The lienable claim finally asserted and allowed by the Court was $17,015.58. The total debts scheduled, including taxes, were $373,981.07. As of today, the Referee's records show claims allowed in the sum of *$400,926.62.* The value of the assets realized by the Trustee, as shown by his interim report of August 1, 1958, is *$143,003.59.* While the preferred claims have been paid, *no dividend* has been paid on the general claims.

40. The Government's tax lien is good, even if the taxes were incurred while the debtor was insolvent. Bankruptcy Act of 1938, § 67, sub. b; 11 U.S.C.A. § 107, sub. b. And, while the taxes are subordinated to claims for (1) costs of administration, (2) wage claims and (3) costs of certain contests in reorganization (Bankruptcy Act of 1938, §§ 64, sub. a, 67, sub. c; 11 U.S.C.A. § 104, sub. a, 107, sub. c), *they are not affected* by discharge (Bankruptcy Act of 1938, § 17, sub. a(1), 11 U.S.C.A. § 35, sub. a (1)).

41. The idea that the allowance of post-bankruptcy interest goes counter to the principle of "equality" was aptly expressed by the Supreme Court in Ticonic National Bank v. Sprague, supra, 303 U.S. at page 411, 58 S.Ct. at page 614. Note 25:

"It is in order to assure equality among creditors as of the date of insolvency that interest accruing thereafter is not considered."

And Mr. Justice Douglas has summed up the theory of "equality" in bankruptcy in a noted apothegm:

"But the theme of the Bankruptcy Act is equality of distribution." Sampsell v. Imperial Paper Co., supra, 1941, 313 U.S. at page 219, 61 S.Ct. at page 907. Note 36.

563.64, is reversed and the said interest is ordered disallowed.

Formal Order to follow to be prepared by counsel for the Trustee.