TEXTILE BANKING COMPANY, Inc.,
Appellant and Cross-Appellee,

v.

H. E. WIDENER, Jr., Trustee of Lincoln Industries, Incorporated, Bankrupt, Appellee and Cross-Appellant.

No. 7783.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 21, 1959.

Decided March 12, 1959.

Rehearing Denied May 12, 1959.

John Miles Keefe, New York City (Penn, Stuart & Phillips, Abingdon, Va., on brief), for appellant and cross-appellee.

H. E. Widener, Jr., Bristol, Va., for appellee and cross-appellant.

Before HAYNSWORTH, Circuit Judge, and PAUL and BOREMAN, District Judges.

PAUL, District Judge.

This case involves the distribution of some of the assets of Lincoln Industries, Inc., Bankrupt, as determined by an order of the District Court entered September 4, 1958. The bankrupt was a manufacturer of furniture and will be referred to as the bankrupt or as Lincoln. We have before us cross-appeals; one by a creditor, Textile Banking Company, Inc. (hereinafter referred to as Textile) and one by H. E. Widener, Jr., Trustee in Bankruptcy (hereinafter referred to as Trustee).

Textile is a New York corporation engaged in the business of buying accounts receivable and making loans. Also involved is a concern named Cordell Industries, Inc. (hereinafter called Cordell) which was an affiliate of the bankrupt. The relation among these parties is described by the District Court as follows [166 F.Supp. 248]:

"Textile is in the business of loaning money and discounting invoices, whereby, for a consideration, it assumes the seller's credit risk. Textile had such an arrangement with the Bankrupt, but before any of Bankrupt's invoices were discounted Textile required the Bankrupt to enter into a factoring agreement * * * whereby Textile would have a factor's lien on all of Bankrupt's inventory and accounts receivable. Textile further required Cordell (Bankrupt's affiliate) to guarantee the payment of all of Bankrupt's invoices discounted by Textile. Textile also discounted other invoices for Cordell. Textile required Cordell to keep a substantial balance on deposit with Textile as security for the payment of the invoices discounted by it.

"On July 25, 1957, Cordell had $30,000.00 in its 'guaranty account' with Textile. It appears that Cordell is also indebted to the Bankrupt."

Among the numerous debts owing by Lincoln at the time it was adjudicated a bankrupt the only ones which are of concern in these appeals are the following:

(1) A debt owing to Textile, later fixed in the amount of $72,000, which was secured by a lien on bankrupt's inventory and payment of which had been guaranteed by Cordell, (2) A debt owing to the Reconstruction Finance Corporation, determined to be in the aggregate sum of $238,437.93 and secured by a deed of trust on all of the Bankrupt's land, plant and machinery, and (3) Unpaid labor claims aggregating $7,591.65, which, under the statutory law of Virginia, were prior liens on all property of the bankrupt.

In the course of the bankruptcy proceeding both the R.F.C. and Textile petitioned the Referee that they be allowed to foreclose their respective liens. These requests were denied and it was ordered, over the objections of these creditors, that sales be made by the Trustee in Bankruptcy free of liens, with the liens transferred to the funds realized from the sales. As a result of this sale the property on which the R.F.C. had a lien

brought an amount which, after paying the R.F.C. lien in full, left a surplus of $143,965.60. The property covered by Textile's lien was sold for $62,737.50. From this there was deducted $3,775.92 for expenses stated to be "incident to the protection of the furniture pending the sale, the advertising costs and other miscellaneous expenses incident to the sale * * * ". Thus the amount realized for Textile under its lien was $58,-961.58. From this sum the Court directed the deduction of a further amount of $1,600 as costs, leaving a net balance of $57,361.58 which the Court ordered applied on the $72,000 debt owing to Textile.

At the time that the property covered by Textile's lien was sold it had in hand $30,000 deposited with it by Cordell pursuant to the latter's obligation to secure the payment of bankrupt's indebtedness to Textile. Following the sale of the property covered by its lien Textile applied this $30,000 on the bankrupt's debt to it.

### Questions Involved

In its appeal Textile submits the following questions for our determination:

"(a) Did the District Court err in ordering that $13,302.86 of the proceeds of the sale of property subject to appellant's lien be denied appellant because of appellant's recovery of $30,000.00 from a third party guarantor, Cordell, Industries, Inc.?"

"(b) Did the District Court err in deducting $1,600.00, the amount the District Court determined it would have cost appellant to liquidate the security covered by appellant's lien in state proceedings, from the proceeds of the sale of such security?"

The cross appeal of the Trustee relates only to the manner in which the District Court disposed of the labor claims, which by virtue of the Virginia statute constituted a lien upon all property of the bankrupt. The complaint of the Trustee is thus stated in his brief:

"It is the position of the Trustee that said (labor) liens should have been preserved for the benefit of the bankrupt estate and that they should have been charged against the property on which the Textile Banking Company, Incorporated claimed its lien."

We take up first for discussion the cross-appeal which may be briefly disposed of.

### The Labor Claims

■■ It is true that under the provisions of the Virginia law, Code 1950, § 43–24, these labor claims, having been perfected as provided by the statute (§ 43–25) were prior liens on *all property* of the bankrupt, real and personal, tangible and intangible. They were prior liens on the property covered by the R.F.C. lien, property covered by Textile's lien, and on all other property of the bankrupt. This being true, no reason appears why the trustee should insist on charging these labor claims solely against that property encumbered by Textile. To permit this would be manifestly unjust. For example there is in the hands of the Trustee the sum of $143,965.60, being the excess realized from a sale of the property on which R.F.C. had a lien after paying R.F.C. in full. This fund is subject to the lien of the labor claims and no reason appears why they should not be paid from it rather than to intrench still further into the only fund from which Textile can be paid.

The Trustee's contentions are based upon his interpretation of the effect of Section 67, sub. c(2) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. c(2). He appears to argue that the labor liens, being statutory liens, are invalid against the Trustee, but that they should be preserved for the benefit of the estate and pass to the Trustee. Concerning this argument it may first be noted that Section 67, sub. c refers only to liens on personal property. The labor liens here cover real estate as well and are not made invalid as to it. But even if, as the Trustee

appears to urge, the labor liens are invalid in their entirety and should be preserved and pass to the Trustee for the benefit of the estate the amount of the lien ($7,591.65) would not be changed and it would cover the same property. The result would be to substitute the Trustee for the labor lienors. The best that the latter could do would be to rely on the priority granted wage claims, while the Trustee would hold a lien (for $7,591.65) to be exercised for the benefit of other creditors. There is nothing in Section 67, sub. c to suggest that the liens of Textile and of R.F.C. admittedly contractual in nature, would be affected in any way.

In handling this matter the District Court recognized the existence of the labor liens and the liens of R.F.C. and Textile. It pointed out that the labor liens were first liens on all of the bankrupt's assets and that the others were liens on only limited portions of the bankrupt's property. In this situation it applied the familiar equitable doctrine of marshalling assets. It held that since there were sufficient assets which were encumbered only by the laborers' liens these liens should be satisfied out of such assets to the exoneration of the property pledged to R.F.C. and to Textile. In the language of the District Court:

> "Textile had a lien only on Bankrupt's inventory and accounts receivable. There were ample funds from the proceeds of the property on which RFC had its lien to pay first the laborers' liens in full and to discharge the RFC lien in full, and to leave a substantial surplus for subsequent lienors and creditors. There were insufficient funds realized from the sale of the property on which Textile had a lien to pay its indebtedness in full. Equity demands that the principle of marshaling assets be applied.
>
> " '* * * (T)he equitable doctrine of marshaling * * * rests upon the principle that a creditor having two funds to satisfy his

debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds * * *.' Merchants' & Mechanics' Bank v. Sewell, 5 Cir., 1932, 61 F.2d 814, 816."

In this holding we think the District Court was entirely correct.

### Textile's Claim and Lien

As previously stated the Court found that the bankrupt owed Textile $72,000 secured by a lien on certain furniture and accounts receivable; when this property was sold it brought only $62,737.50. From this sum the Court approved the deduction of $3,775.92 for certain expenses and a further sum of $1,600 for costs. Apparently Textile agreed to the allowance of the first of these items, but it objected to the second, and assigns it as error. These allowances will be discussed later herein. They reduced the amount realized for Textile from the sale to $57,361.58. The Court then noted that Textile had received $30,000 from Cordell under the latter's guaranty. This, together with the amount realized from the sale, made an amount in excess of Textile's debt.

In undertaking to make application of the sum represented by the amount realized by Textile from the sale of the property plus the $30,000 received from Cordell, the Court, after consideration of various items involved, concluded that after Textile had been satisfied in full there would remain in the hands of the Trustee the sum of $13,302.86. As to this the Court said:

> "Cordell's funds held by Textile in its 'guaranty account' having been used to reduce the indebtedness of Bankrupt to Textile, equity requires that Cordell be subrogated to the rights of Textile in the balance of the proceeds in the 'furniture account' realized from the sale of the furniture on which Textile had its factor's lien in the amount of $13,302.86."

However, the Court noted that it appeared that Cordell was indebted to the bankrupt in some amount not ascertained[1] and it was therefore ordered that the Trustee retain the $13,302.86 in his hands until there could be determined the amount, if any, of Cordell's indebtedness to the bankrupt; that if any such indebtedness was found, the Trustee should apply so much of the $13,302.86 as was necessary to satisfaction of the debt, with the balance, if any, to be paid over to Textile to be held by it for the benefit of Cordell.

We are in general accord with the principles applied by the District Court in the distribution of the fund. There are, however, several items which entered into its calculations which are subject to revision, and which will be adverted to shortly.

■ The first error assigned by Textile is to the action of the Court in ordering the $13,302.86 balance to be retained by the Trustee for future application and in refusing to pay it over to Textile. Textile states its contention in this language.

"Appellant, a secured creditor, is entitled to all proceeds of the sale of property subject to its lien to the full amount of indebtedness owing by the Bankrupt and secured by such lien, irrespective of any amounts collected by appellant from a third-party guarantor and irrespective of any indebtedness owing by such guarantor to the Bankrupt."

If by this it is meant to say that Textile is the beneficial owner of this balance it does not require any extensive citation of authority to reject this broad contention. It is clear that if Textile, before calling on Cordell's guaranty, had waited to find out how much it would receive from the sale of the encumbered property, then it could have exacted from Cordell only such amount as was required to make good the deficiency on

its debt. Cordell was required to pay only such amount as was necessary to the full satisfaction of Textile's debt. And when Textile applied on its debt the full amount of the guaranty fund and also pursued its remedy under its lien, and the amount realized from the combined funds was in excess of Textile's debt, Cordell had an equitable right to such excess. The applicable principle, on which the authorities agree, is thus related in Swarts v. Fourth Nat. Bank, 8 Cir., 117 F. 1, 12.

"A creditor who holds the obligations of a bankrupt which have been partly paid by an accommodation maker, an endorser, or a surety, may prove his claim, and have that claim allowed against the estate of the bankrupt for the full amount owing by the bankrupt upon the obligations, but if the dividends on that claim from the bankrupt estate, plus the amount paid by the surety, aggregate more than the entire amount of the obligations and interest, he holds the surplus in trust for the surety."

In Matter of Ellerhorst, 8 Fed.Cas., p. 522, No. 4381, decided under the Bankruptcy Act of 1867, it was held:

"Where the holder of a note receives part of the amount of the same from the endorser, he is entitled to prove for the whole amount against the estate of the bankrupt maker, and holds any surplus he may receive over and above the amount of the note in trust for the endorser."

The only question here would seem to be as to the right of the Court to order that the $13,302.86 be held by the Trustee for application upon the debt alleged to be owing by Cordell to the bankrupt, rather than turning it over to Textile from whose security it had been derived and who had an obligation to return it to Cordell and who would have held it only as trustee for Cordell.

1. Note. The statement of debts and assets filed by the bankrupt lists as an asset a debt due it from Cordell in the amount of $17,316.48.

We think the course of action directed by the District Court, was a proper exercise of its equitable powers. Actually the money was in the hands of the Trustee in Bankruptcy. But whether in his custody or that of Textile we see no difference. In either case the fund was owing to Cordell and when it appeared that the bankrupt had asserted a debt owing to it by Cordell we think it was permissible that the money be held for application on that debt. It may be noted that Textile is in no way injured since it is not entitled to the money, and Cordell, which is the beneficial owner of this balance, has not entered any complaint.

In the course of its opinion the District Court had occasion to consider the matter of interest on Textile's debt. Contrary to Textile's contention the Court held that it was not entitled to be paid interest from the bankrupt estate. It is not clear whether Textile now asserts that ruling as error or not. In the brief it is not posed as one of the questions for our consideration although there was some reference to it both in the brief and in oral argument.

In any event we think the District Court's ruling was correct. It was to the effect that since the proceeds from the property covered by Textile's lien were insufficient to pay the principal of the debt it was not entitled to collect interest from the bankrupt, citing Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244. The case cited as well as many others which might be named support this conclusion.

However the Court pointed out that under the terms of Cordell's guaranty it was liable to Textile for interest and certain attorney's fees. After determining the amounts of these items the Court took them into account in the detailed calculations by which it arrived at the balance of $13,302.86 remaining for the benefit of Cordell. The result is that the interest due Textile has been paid from Cordell's guaranty account and not from the bankrupt estate. Here again Textile has no basis for complaint. Cordell is the unprotesting loser.

### Expenses of Sale

The second assignment of error by Textile relates to the action of the District Court in directing the deduction of $1,600 from the fund realized from Textile's security—designated by the Court as "costs". The sum of $1,600 was arrived at on the theory that if Textile had been permitted to enforce its lien the proceedings to do so would have entailed a cost of that amount, and that since the Trustee had conducted the sale this estimated sum should be charged against the fund.

It appears that the sum of $3,775.92 had already been deducted from the proceeds of Textile's security to cover, as stated by the Court, the expense of "protection of the furniture pending the sale, the advertising costs and other miscellaneous expenses incident to the sale." It is recited in the Court's opinion that Textile agreed to this. This is confirmed by the fact that Textile has not questioned this allowance in this Court. In view of this we do not feel free to review this action of the lower Court. This is, however, not to be construed as giving it affirmative approval, so far as establishing a precedent is concerned.

There are certain well settled principles governing the disposition in bankruptcy cases of the proceeds from the sale of property encumbered by liens. The Act recognizes the rights of secured creditors and is concerned with their protection. The trustee in bankruptcy takes title to only such property as the bankrupt, prior to the filing of the petition, could have transferred or which could have been levied on and sold under judicial process against him. Bankruptcy Act. Section 70, sub. a(5), 11 U.S.C.A. § 110, sub. a(5).

"The trustee as successor to the title of the bankrupt takes the property in the same condition that it was held by the bankrupt; his title as successor is subject to all liens and encumbrances which were valid

against the bankrupt. * * *. The design of Congress is to protect all liens, whether arising by contract or by statute, and to avoid only those which are in fraud of the act * * *." 6 Am.Jur. p. 1116. Citing Hiscock v. Varick Bank, 206 U.S. 28.

And again it is said, 6 Am.Jur. p. 1123:

"In other words, the trustee in bankruptcy is entitled to the equity of redemption, but to that only, in respect of property of the bankrupt subject to a valid mortgage."

In re Tele-Tone Radio Corp., D.C., 133 F.Supp. 739, 750, expresses the principle in these words:

"Thus, when the bankrupt has lawfully assigned to a creditor certain security previous to the bankruptcy, the debtor's only interest in such security is to the surplus remaining after payment of the debt. The security, in so far as necessary to pay the debt, has been carved out of the debtor's estate before the bankruptcy occurs."

In most cases where, at the time of bankruptcy, there are debts against the bankrupt sec_d on specific property the trustee is forced to decide whether he will abandon the property to the creditor as offering no equity for the estate, or whether it should be sold in the bankruptcy proceedings in the expectation that a surplus will be realized for the benefit of the general creditors. This decision is to be made in the exercise of a sound judgment under the approval of the Court. But where the Trustee has elected to sell the encumbered property he cannot intrench upon the amount of the secured debt for the payment of any of the expenses of administration, such as commissions and similar costs. Such costs can be taken only out of any surplus realized over and above the amount necessary to pay the secured debt. As stated in Remington on Bankruptcy, Sect. 2609:

"It is well settled that, ordinarily, general bankruptcy administration expenses are not chargeable against proceeds from the sale of assets covered by the mortgages or liens to the detriment of the lienholder or secured creditor."

And in 6 Am.Jur. p. 1511, Sect. 1689, we find:

"A secured creditor need bear only the costs of enforcing his rights and the necessary expenses incurred in the preservation of the property pledged for the debt. A lien holder is not to be divested of his rights in the security by an allowance of commissions and other expenses, where the services for which they are allowed have no relation to the security."

And this appears to be the rule whether the sale by the trustee was consented to by the lienholder or not. See Mills v. Virginia-Carolina Lumber Co., 4 Cir., 164 F. 168, 171, 21 L.R.A.,N.S., 901; In re Dawkins, D.C.S.C., 34 F.2d 581; In re Street, 3 Cir., 184 F.2d 710.

It is unquestionably the rule where, as here, the sale by the Trustee has been had over the objection of the lienholder. See 6 Am.Jur. p. 1512; Reconstruction Finance Corp. v. Rhodes, 5 Cir., 214 F.2d 606, 607, 48 A.L.R.2d 1339; In re Zehner, D.C.La., 193 F. 787, 788; In re Utt, 7 Cir., 105 F. 754; In re Hansen & Birch, D.C.Ga., 292 F. 898.

In such a case the fund on which the debt is secured cannot be intrenched upon except for payment of the actual costs of selling the property, plus in some circumstances the expense, if any, of preserving the encumbered property pending the sale.

This brings us to consideration of the specific item of $1,600 which the Court charged against Textile's security as representing the amount that it would have cost the creditor to enforce its lien in the State court. Apparently the Court was of opinion that in any case where encumbered property is sold by a

trustee in bankruptcy he may make a charge against the resulting fund in whatever amount would have been the cost of an enforcement proceeding in the State court. That is not the rule. The cost of enforcing the lien in a State court is a *limit* upon the amount of the charge, not its measure. We believe the correct rule to be that the security can be charged with the expense *actually* incurred by the Trustee in making the sale; with the proviso, however, that this cost must not exceed what it would cost the creditor to proceed in the State court. Stated otherwise, the fund may be charged with the actual costs of the sale by the trustee or the cost of enforcing the lien in a State court, whichever is the smaller sum.

The reasons for this rule are obvious. Where a sale has been made by the trustee, over the objection of the secured creditor, it is manifestly unjust that the creditor should be charged with an expense greater than he would have incurred had he been allowed to pursue his remedy in another forum. On the other hand, if the expense of the sale by the trustee is *less* than would have been incurred in a State court proceeding a charge of this latter sum would result in a profit to the bankrupt estate at the expense of the secured fund—a result which is also plainly unjust.

In view of what is said above it is necessary that there be a re-examination by the District Court as to the $1,600 charge. It is noted that the charge of $3,775.92 which had previously been allowed against the security fund, with the consent of the creditor, is stated to cover "the protection of the furniture pending the sale, the *advertising costs* and other *miscellaneous costs incident to the sale*." (Emphasis added.) From this language it would appear that all of the costs incurred in selling Textile's security had already been deducted from the fund. Since the Court had already held, quite properly, that the fund could not be charged with Trustee's commissions or any other cost of administration it is not clear to us what other costs of sale, if any, remained to which the $1,600 was to be applied.

However, on the chance that there may be some legitimate item of cost not covered by the $3,775.92 we direct that there be further inquiry to determine this. In such situations as the one depicted here courts should require that the trustee's report show accurately the actual cost attributable to the sale of the encumbered property, and on remand this should be done. If it then appears that the entire cost of selling the property encumbered by Textile's lien has been included in the $3,775.92 then the $1,600 charge is improper in its entirety. If it happens that there are proper items of cost not otherwise taken care of they may be charged to the $1,600, with any balance returned to the security fund. It is evident that this course will result in a change in the amount of the fund applicable to Textile's debt, but this presents a very simple arithmetical calculation easily made.

We find no merit in the cross appeal by the Trustee and as to it the judgment of the District Court is affirmed.

As to the appeal of Textile the judgment of the District Court is affirmed in all respects except as relates to the charge of $1,600 hereinbefore discussed. The case is remanded for further examination as to the propriety of such charge, or any part of it, in the light of what we have said herein.

Affirmed in part, reversed in part and remanded.