UNITED STATES of America,
Appellant,

v.

J. Allen HARRINGTON, Trustee,
Appellee.

In the Matter of G. N. CHILDRESS, dba
Childress Transportation Company,
Bankrupt.

No. 7812.

United States Court of Appeals
Fourth Circuit.

Argued June 11, 1959.

Decided Aug. 6, 1959.

Karl Schmeidler, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., James E. Holshouser, U. S. Atty., No. Wilkesboro, N. C., and Lafayette Williams, Asst. U. S. Atty., Greensboro, N. C., on brief), for appellant.

Richard L. Wharton, Greensboro, N. C. (C. R. Wharton, Greensboro, N. C., George M. McDermott, Orton J. Cameron, Sanford, N. C., Wharton & Wharton, Greensboro, N. C., and McDermott &

Cameron, Sanford, N. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BARKSDALE, District Judge.

SOBELOFF, Chief Judge.

In the distribution of a bankrupt's estate, what effect is to be accorded to a United States tax lien in respect to post-bankruptcy interest and tax penalties? This issue, not heretofore decided in this Circuit but extensively litigated elsewhere, is here presented for decision.

The context in which the question arises may be briefly summarized. On March 16, 1955, creditors of G. N. Childress, a motor carrier, filed a petition in the United States District Court for the Middle District of North Carolina seeking an adjudication of bankruptcy, and he was so adjudicated on March 24, 1955. Receipts from the sale of assets totaled $304,090.85. After payment of the costs of sale, mortgages, wage claims and preferred liens, but before payment of any other claims or administrative expenses, $127,391.94 remained. Out of this, the United States was paid $57,146.80 upon claims for unpaid taxes with respect to which it had filed notices of liens. The United States here claims in addition $11,455.67 for interest from March 16, 1955 until January 21, 1958 on its liened tax claims, and $3,085.81 in penalties. If the contested claims for post-bankruptcy interest and penalties are allowed, there will be less than $25,000 (after payment of remaining administrative costs) for claims of general creditors amounting to $70,276.22.

The Referee disallowed the Government's claims, and his action was affirmed by the District Court. The United States appeals, asserting error in the disallowance of both interest beyond the date of the filing of the petition and tax penalties, for which notices of liens had also been properly filed. For the reasons which we shall set forth, we agree with the District Court.

## I. *Interest*

■■ It has long been an established principle in bankruptcy and other insolvency proceedings that interest upon claims stops with the initiation of the proceedings. In Thomas v. Western Car Company, 1893, 149 U.S. 95, 116; 13 S.Ct. 824, 833, 37 L.Ed. 163, the Supreme Court said:

"\* \* \* As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate. \* \* \* "

In bankruptcy cases, the courts have been unanimous in holding that, generally, interest upon claims does not accrue after the filing of the petition. This is true as to both unsecured and secured claims. Sexton v. Dreyfus, 1911, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244; Board of County Com'rs of Shawnee County, Kan. v. Hurley, 8 Cir., 1909, 169 F.2d 92; Brown v. Leo, 2 Cir., 1929, 34 F.2d 127; Littleton v. Kincaid, 4 Cir., 1950, 179 F.2d 848, 27 A.L.R.2d 572; 3 Collier on Bankruptcy (14th Ed.) Sec. 63.16.

To this rule there have been two well-established exceptions: (1) where the bankrupt ultimately proves to be solvent, and (2) where securities, held by the creditor, themselves produce income after the filing of the petition. The Government contends for the recognition of a third exception to the rule stopping interest at the date of bankruptcy. It maintains that post-bankruptcy interest is allowable to a secured creditor where the amount of his security is sufficient to satisfy both principal and interest on the secured claim. It is the Government's position that by virtue of having filed notices of tax liens prior to the petition, it is a secured creditor, and since the lien attaches to all of the property of the bankrupt, the entire estate is security for the tax claim. And, the argument continues, since the assets of the bank-

rupt are sufficient to pay the principal of the Government's tax claim plus interest until the date of payment, even though this will reduce the amount going to the other creditors, the Government is entitled to interest upon its tax claim until the date of payment.

Before 1949, the question of post-bankruptcy interest on tax claims was unsettled.[1] In that year, however, the Supreme Court, in City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L. Ed. 710, held that because the amendment to the Bankruptcy Act of 1926, and later the Chandler Act, deprived taxes of their preferred status,[2] there was no exception to the rule against post-bankruptcy interest for tax claims. The opinion of the Supreme Court in the Saper case seems to have been intended to put the question to rest once and for all.[3] The Court in Saper, 336 U.S. at page 330, note 7, 69 S.Ct. at page 555, recognized the two exceptions to the rule disallowing post-bankruptcy interest mentioned above, i.e., where the bankrupt is solvent and where securities held by a creditor as collateral produced interest or dividends during bankruptcy, but the Court made no mention of the third exception asserted by the Government in the instant case.

In spite of the broad language of Saper, which appears to deny post-bankruptcy interest on *all* tax claims, the Government, as was pointed out by Judge Yankwich in In re Cameron, D.C.S.D.

Cal.1958, 166 F.Supp. 400, 403, has attempted ever since, with little success, "to have the courts confine the Saper case ruling to the specific situation existing in that case." For example, in United States v. Edens, 4 Cir., 1951, 189 F.2d 876, 877, the Government tried to distinguish a Ch. X reorganization proceeding, 11 U.S.C.A. § 501 et seq. from an ordinary bankruptcy proceeding such as was involved in the Saper case, but this Court held that the rule against post-bankruptcy interest on tax claims applied in the former proceeding just as in the latter. Judge Parker said:

> "The equitable considerations which justify denying post bankruptcy interest on tax claims in the case of reorganization proceedings are quite as strong as for denying it in straight bankruptcy proceedings. The real reason in either case is that the delay resulting from the institution of the proceeding should not be permitted to benefit one class of creditors at the expense of another, but that the rights of all should be determined as of the commencement of the proceeding. * * *"

Once more, in United States v. General Engineering & Mfg. Co., 8 Cir., 1951, 188 F.2d 80, the Court overruling the Government's attempt to limit Saper, held that the rule prohibiting post-bankruptcy interest on tax claims applies in a Ch. XI arrangement proceeding. 11 U.S. C.A. § 701 et seq. Again, in Sword Line

1. In re Kallak, D.C.N.D.1906, 147 F. 276 held that because, under the Bankruptcy Act of 1898, taxes were not claims and did not have to be proven, but had absolute priority over all claims, the rule stopping interest should not apply and post-bankruptcy interest was allowable. Several other decisions followed the Kallak case in this regard.

2. These amendments consisted of the requirement of proof in Sec. 57, sub. n [11 U.S.C.A. § 93, sub. n] and the subordination of taxes to other priorities in Sec. 64 [11 U.S.C.A. § 104].

3. Mr. Justice Jackson, speaking for the Court, pointed out that:
"* * * More than forty years ago Mr. Justice Holmes wrote for this Court

that the rule stopping interest at bankruptcy had then been followed for more than a century and a half. He said the rule was not a matter of legislative command or statutory construction, but, rather, a fundamental principle of the English bankruptcy system which we copied. Sexton v. Dreyfus, 219 U.S. 339, 344 [31 S.Ct. 256, 257]. Our present statute contains no provision expressly repudiating that principle or allowing an exception in favor of tax claims. Every logical implication from relevant provisions is to the contrary. * * *" City of New York v. Saper, supra, 336 U.S. at page 330, 69 S.Ct. at page 555.

v. Industrial Commissioner of State of N. Y., 2 Cir., 1954, 212 F.2d 865 and National Foundry Co. of N. Y. v. Director of Int. Rev., 2 Cir., 1956, 229 F.2d 149 the Court went further and held that post-bankruptcy interest on tax claims was not collectible in a direct action against a debtor after confirmation of arrangement in Ch. XI proceedings.

■ Finally, as to the Government's contention that the rule of the Saper case ought not to apply where tax claims have been reduced to liens, three District Courts have considered this contention and rejected it, while only one has upheld the Government's position.[4] We think that as a result of the decision of the Supreme Court in Saper, and the later cases in lower Federal Courts denying post-bankruptcy interest on tax claims, it is now settled that interest on tax claims, whether liens have been perfected or not, is not collectible beyond the date of the filing of the petition in bankruptcy.

■ However, even if the Government is correct in its contention that the Saper case does not control where tax claims are secured by liens, we think that it is still not entitled to post-bankruptcy interest in this case. Let us turn again to the two clearly established exceptions to the rule that interest on both secured and unsecured claims stops with the filing of the petition in bankruptcy. The first, as we have seen, involves the unusual situation where the bankrupt is solvent and a surplus is left after all claims have been paid. In that situation, the law allows creditors post-bankruptcy interest on interest-bearing claims instead of turning over the entire surplus to the debtor. In Johnson v. Norris, 5 Cir., 1911, 190 F. 459, 462, the Court justified the exception on the ground that the reason for the rule against post-bankruptcy interest disappears where the estate is solvent. In such case there will be no inequality of distribution and other creditors will not suffer by allowing interest on claims after bankruptcy. To the same effect, see Brown v. Leo, 2 Cir., 1929, 34 F.2d 127 and Littleton v. Kincaid, 4 Cir., 1950, 179 F.2d 848, 27 A.L. R.2d 572.

The second exception, as above noted, is where the creditor holds a particular security which itself yields interest or dividends during the bankruptcy proceedings. The creditor is allowed to apply the income derived from the security to the payment of interest accruing on his claim after the filing of the petition. Sexton v. Dreyfus, 1911, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244. The reason for this exception also, apparently, is that other creditors will not suffer by the allowance of post-bankruptcy interest. The share of the bankrupt's assets going to the remaining creditors, such assets being determined at the date of the petition, will not be diminished by applying income from collateral, produced subsequent to the filing of the petition, to post-bankruptcy interest due the holder of the collateral.[5]

■ Clearly, the instant case falls within neither of these exceptions. In appraising the Government's assertion of

---

4. In re Industrial Machine & Supply Co., D.C.W.D.Pa.1953, 112 F.Supp. 261, In re Lykens Hosiery Mills, D.C.S.D.N.Y. 1956, 141 F.Supp. 895, and In re Cameron, D.C.S.D.Cal.1958, 166 F.Supp. 400 have all held that no interest accrues beyond the filing of the petition upon liened tax claims, while In re Parchem, D.C. Minn.1958, 166 F.Supp. 724 has sustained the Government's position as to interest (but not penalties) on liened tax claims.

5. It is a general maxim that a creditor's share in the bankrupt estate is determined as of the date of the filing of the petition. As was said in Board of County Com'rs of Shawnee County, Kan. v. Hurley, 8 Cir., 1909, 169 F. 92, 94: "On that date [the filing of the petition] there vests in such creditor as a cestui que trust an equitable estate in such a part of the property of the bankrupt as the amount of his provable claim at that time bears to the entire amount of the provable claims against the estate." In this view, allowing post-bankruptcy interest to the holder of securities where the securities themselves are producing income after the filing of the petition does not diminish this equitable estate of another creditor.

a broad third exception, entitling a secured creditor to post-bankruptcy interest where the value of his security exceeds the principal of his claim plus interest to the date of payment, irrespective of the security's income producing quality, it is appropriate to note that the grounds for the two recognized exceptions will not support such additional exception.[6] The justification for the first two exceptions, i.e., that the shares distributable to the remaining creditors are not diminished by allowing post-bankruptcy interest, certainly does not exist in the case of the third exception proposed by the Government. If interest is allowed a secured creditor during the bankruptcy proceeding, even though the security is sufficient, payment must come from assets which would normally go to the remaining creditors. Delay in the termination of the bankruptcy proceedings would diminish the shares of general creditors through no fault of theirs. And where the security for the claim consists of the bankrupt's entire property, as in the present case, the damage to the unsecured creditors would be even greater. The secured creditor in such case is not confined to specific property (as in the mortgage situation, for example, where the amount of interest collectible by the mortgagee would be limited to the value of the specific property held as collateral), but the secured claim could accrue post-bankruptcy interest until the entire estate is exhausted. This is precisely the situation which the rule against post-bankruptcy interest is designed to prevent. In Vanston Bondholders Protective Committee v. Green, 1946, 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162, the Supreme Court said with respect to post-bankruptcy interest:

" * * * The general rule in bankruptcy and in equity receiver-

ship has been that interest on the debtors' obligations ceases to accrue at the beginning of proceedings. Exaction of interest, where the power of a debtor to pay even his contractual obligations is suspended by law, has been prohibited because it was considered in the nature of a penalty imposed because of delay in prompt payment—a delay necessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved. * * * "

To allow the Government interest on its tax claim until payment would be to penalize the remaining creditors because of a delay necessitated by law. The reason for the rule against post-bankruptcy interest is not a bit less applicable to the present case than any other.

In spite of the strong reasons against allowing post-bankruptcy interest to the secured creditor, even though the value of his security exceeds his claim for both principal and interest, several cases have allowed such interest in certain special situations. We do not find in the decided cases sufficient support for a third general exception. Usually the allowance has been to a mortgagee, in apparent reliance upon Coder v. Arts, 1909, 213 U.S. 223, 245, 29 S.Ct. 436, 53 L.Ed. 772, where the Court, without any discussion, (as the case was primarily concerned with whether or not the particular mortgage involved was a fraudulent conveyance), affirmed the Circuit Court of Appeals in allowing post-bankruptcy interest to a mortgagee. It appears that the cases following Coder involve either mortgages (as in Coder), deeds of trust, bonds secured by collateral, or a vendor's

---

6. The Supreme Court does not appear to have recognized any such general exception. City of New York v. Saper, supra, 336 U.S. at page 330, note 7, 69 S.Ct. at page 555, where the Court where the Court mentions only two exceptions to the rule against post-bankruptcy interest. See In re Macomb Trailer

Coach, 6 Cir., 1952, 200 F.2d 611, where the Court points out that there is some difference of opinion as to a third exception, but the Court there recognizes it in a mortgage situation. See also Judge Clark's discussion in Sword Line v. Industrial Commissioner of State of N. Y., 2 Cir., 1954, 212 F.2d 865, 869.

lien on a particular chattel.[7] With the exception of In re Parchem, D.C.Minn. 1958, 166 F.Supp. 724, sustaining the Government's position, no case found by us involves a statutory lien upon all of the assets of the bankrupt; all involve liens upon specific property of the bankrupt growing out of a contract between him and the creditor. When the Coder case was in the Circuit Court of Appeals, Coder v. Arts, 8 Cir., 1907, 152 F. 943, 950, the Court, in allowing post-bankruptcy interest to the mortgagee, appears to have contemplated an exception for contractual liens only:

"* * * By the terms of the note and mortgage the mortgagor agreed to pay interest on his debt until it was paid, and that the mortgaged lands might be sold by the mortgagee, and that their proceeds might be applied to the payment of this debt and interest. The covenant for the sale and the application of the proceeds of these lands to the payment of the debt and interest was valid and binding, and it ran with the land, so that when the latter came to the hands of the trustee it was mortgaged for the payment of the interest as much as for the payment of the principal, and the proceeds of its sale necessarily came to his possession subject to the same charge. * * *"

The language in many other cases allowing interest to secured creditors, where the value of the security is sufficient, seems to indicate an exception only for mortgagees or holders of other particular collateral.[8]

The justification for this allowance to mortgagees, etc., would seem to be that when the creditor extended credit, he relied upon the particular security given as collateral to secure both the principal of the debt and interest until payment and, if the collateral is sufficient to pay him, the contract between the parties ought not be abrogated by bankruptcy. This rationale has no application to tax liens.[9]

As we have seen, the instances where post-bankruptcy interest has been allowed a creditor with sufficient security are narrowly restricted. We are not prepared, in any event, to extend such "exception" beyond the area of contractual debts to statutory liens on all of the bankrupt's property.

## II. Penalties

■ Sec. 57, sub. j of the Bankruptcy Act [11 U.S.C.A. § 93, sub. j] provides:

"Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have ac-

7. In re McAusland, D.C.N.J.1916, 235 F. 173; San Antonio Loan & Trust Co. v. Booth, 5 Cir., 1924, 2 F.2d 590; People's Homestead Ass'n v. Bartlette, 5 Cir., 1929, 33 F.2d 561; Mortgage Loan Co. v. Livingston, 8 Cir., 1930, 45 F.2d 28; In re Chicago, R. I. & P. Ry. Co., 7 Cir., 1946, 155 F.2d 889; Eddy v. Prudence Bonds Corporation, 2 Cir., 1957, 165 F.2d 157; Oppenheimer v. Oldham, 5 Cir., 1949, 178 F.2d 386; Kagan v. Industrial Washing Machine Corp., 1 Cir., 1950, 182 F.2d 139; In re Macomb Trailer Coach, 6 Cir., 1952, 200 F. 2d 611; Castaner v. Mora, 1 Cir., 1956, 234 F.2d 710; Palo Alto Mutual Savings and Loan Ass'n v. Williams, 9 Cir., 1957, 245 F.2d 77; Jefferson Standard Life Ins. Co. v. United States, 9 Cir., 1957, 247 F.2d 777.

8. See: In re Gotham Can Co., 2 Cir., 1931, 48 F.2d 540; Wilson v. Dewey, 8 Cir., 1943, 133 F.2d 962; United States v. Sampsell, 9 Cir., 1946, 153 F.2d 731; Littleton v. Kincaid, 4 Cir., 1950, 179 F.2d 848, 27 A.L.R.2d 572; Oppenheimer v. Oldham, 5 Cir., 1949, 178 F.2d 386.

9. See: In re Lykens Hosiery Mills, D.C. S.D.N.Y.1956, 141 F.Supp. 895 and In re Cameron, D.C.S.D.Cal.1958, 166 F. Supp. 400 for discussions of the differences between contractual liens and tax liens with respect to post-bankruptcy interest.

crued on the amount of such loss according to law."

It has long been settled that the above provision prohibited the allowance of tax penalties in bankruptcy, People of State of New York v. Jersawit, 1924, 263 U.S. 493, 44 S.Ct. 167, 68 L.Ed. 405. However, the Government, paralleling its argument for post-bankruptcy interest, contends that Sec. 57, sub. j applies only to unsecured tax claims, and that where it has obtained a tax lien, penalties may be included despite the express prohibition of Sec. 57, sub. j. The Government urges that its lien securing tax penalties is preserved in bankruptcy by Sec. 67, sub. b of the Act [11 U.S.C.A. § 107, sub. b] and that the bankruptcy court is powerless to go behind the tax lien and disallow the penalties. The Supreme Court has never decided this exact issue, and the cases in the lower Federal Courts are evenly divided.[10] We think the better view is that a tax penalty, whether secured by a lien or not, is still a penalty and is expressly barred by Sec. 57, sub. j. Sec. 67, sub. b merely exempts certain statutory liens, including tax liens, from the provisions concerning preferences in Sec. 60. Nothing in the language of Sec. 67, sub. b justifies the conclusion that it is intended to except liened penalties from the prohibition of Sec. 57, sub. j. Both sections are entitled to be given effect.

The Government insists that although the trustee or bankruptcy court may inquire into the validity of a lien, once the lien has been perfected, neither the trustee nor the court has any authority to scrutinize it. We find little merit in this contention. In Pepper v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, it was held that the bankruptcy court, being a court of equity, could determine the allowability of a claim underlying a judgment lien, even though the judgment was valid against the bankrupt. In disallowing the claim, the Supreme Court said, 308 U.S. at page 305, 60 S.Ct. at page 244:

"* * * And the mere fact that a claim has been reduced to judgment does not prevent such an inquiry. As the merger of a claim into a judgment does not change its nature so far as provability is concerned, Boynton v. Ball, 121 U.S. 457, 7 S.Ct. 981, 30 L.Ed. 985, so the court may look behind the judgment to determine the essential nature of the liability for purposes of proof and allowance. * * *"

There is no rational ground for saying that the bankruptcy court may look behind a judgment lien to see what kind of claim it secures, but that it may not examine a tax lien.

While Gardner v. State of New Jersey, 1947, 329 U.S. 565, 580, 67 S.Ct. 467, 475, 91 L.Ed. 504, dealt with a railroad reorganization under Sec. 77, 11 U.S.C.A. § 205, and did not directly decide the question of the allowability of tax penalties reduced to liens, the Court, in discussing examples of a bankruptcy court's powers, significantly said:

"The reorganization court may also adjudicate questions pertaining to the amount of a tax claim secured by a lien without crossing the forbidden line marked by Arkansas Corporation Commission v. Thompson, supra [313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244]. There is, for example, the question whether the

10. Holding that tax penalties secured by liens are allowable claims in bankruptcy: In re Knox-Powell-Stockton Co., 9 Cir., 1939, 100 F.2d 979; Commonwealth of Kentucky ex rel. Unemployment Compensation Commission v. Farmers Bank & Trust Co., 6 Cir., 1943, 139 F.2d 266, Chief Judge Simons dissenting in an extended opinion; Grimland v. United States, 10 Cir., 1953, 206 F.2d 599; In re Urmos, D.C.E.D.Mich.1955, 129 F.Supp. 298; In re John S. Goff, Inc., D.C.Me.1955, 141 F.Supp. 862. Not allowing liened tax penalties: United States v. Phillips, 5 Cir., 1959, 267 F.2d 374; In re Burch, D.C.Kan.1948, 89 F.Supp. 249; In re Hankey Baking Company, D.C.W.D.Pa.1954, 125 F.Supp. 673; In re Lykens Hosiery Mills, D.C.S.D.N.Y.1956, 141 F.Supp. 895; In re Parchem, D.C.Minn.1958, 166 F.Supp. 724.

726

amount of the claim has been swollen by the inclusion of a forbidden penalty and thus to that extent does not meet the bankruptcy requirements for proof and allowance of claims. Section 57j of the Bankruptcy Act provides that debts owing a State as a 'penalty or forfeiture' shall not be allowed. * * * "

■ This leaves little room to question the bankruptcy court's power to examine a liened claim to ascertain what it is for, and where it is for tax penalties specifically forbidden by the statute, the claim should not be allowed.

The District Court's disallowance of the United States' claim for post-bankruptcy interest on its liened tax claims and for tax penalties is

Affirmed.