In the Matter of **UNIKRAFT HOMES OF VIRGINIA, INC., Bankrupt.**
No. 72–BK–294–R.

United States District Court,
W. D. Virginia,
Roanoke Division.
Jan. 10, 1974.

J. Thomas Engleby, III, Roanoke, Va., for bankrupt.

Roy B. Willett, trustee, Roanoke, Va., for trustee.

Dudley J. Emick, Jr., Fincastle, Va., for Down's Chevrolet.

James P. Hart, Jr., Roanoke, Va., for C. F. Kefauver.

E. Montgomery Tucker, Roanoke, Va., for U. S.

Lawrence C. Musgrove, Roanoke, Va., for United Va. Bank/Security National.

## OPINION AND ORDER

TURK, Chief Judge.

Involuntary bankruptcy proceedings were filed against Unikraft Homes of Virginia, Inc. on April 10, 1972, and following an unsuccessful attempt to convert the proceeding into a reorganization under Chapter XI of the Bankruptcy Act, Unikraft Homes was adjudicated a bankrupt on June 20, 1972. At the first meeting of the creditors, held on July 26, 1972, a trustee was appointed and was ordered to sell all of the property belonging to the bankrupt free of liens, with any valid liens to be impressed upon the proceeds of such sale or sales with their respective validity, amounts and priorities to be subsequently determined.

The primary asset of the bankrupt was a parcel of land in Roanoke County which was encumbered by two deeds of trust: The first was a purchase money deed of trust covering the unpaid purchase price of $32,000.00 with interest from May 28, 1971 in favor of C. F. Kefauver and others; and the second deed of trust was in favor of United Virginia Bank/Security National securing an un-

paid principal balance of $14,000.00 with interest. The property was further encumbered by a judgment in favor of Downs Chevrolet in the original principal amount of $5,150.00 and a tax claim in favor of the United States Internal Revenue Service in the amount of $15,247.18.

The trustee under the second deed of trust had been requested by United Virginia Bank/Security National to foreclose on the property in May of 1972, but on the eve of the scheduled foreclosure sale, the Bankruptcy Judge entered an *ex parte* restraining order preventing the sale. No hearing was held on this restraining order and it remained in effect until the property was finally sold by the Trustee in Bankruptcy in a private sale with final approval of the Bankruptcy Court on May 22, 1973.[1] The sale price was $52,250.00.

In his memorandum opinion and order, the Bankruptcy Judge directed that the Trustee in Bankruptcy pay to the holders of the first and second deed of trust liens the principal amount due with interest to May 17, 1973, the date on which the proceeds from the sale of the property were paid to the Trustee in Bankruptcy. He further ordered that 3½% of the amount distributed to these parties be deducted as properly assessed administrative costs.

Five petitions for review of the Bankruptcy Judge's opinion have been filed in this court. The Bankruptcy Judge has certified the issues presented in the petitions for review to be:

(1) Whether or not a secured creditor secured by Deed of Trust on real estate is entitled to post-bankruptcy interest where the real estate is sold by the Trustee, free of liens, by order entered, without objection, with such valid liens, their validity, priority and amounts impressed upon the proceeds of sale; and if post-bankruptcy inter-

est is payable by the Trustee, to what date does the same accrue; and

(2) To what extent are administrative costs and expenses chargeable against the proceeds of such a sale.

The first and second deed of trust noteholders contend that the Bankruptcy Judge erred in assessing any administrative costs against them and that interest on their notes should have been allowed to the date which they actually received payment. Down's Chevrolet and the United States, as respective holders of the third and fourth statutory liens on the property, as well as the Trustee in Bankruptcy all contend that interest should not be allowed to the deed of trust noteholders beyond the filing of the bankruptcy petition on April 10, 1972. The Trustee in Bankruptcy additionally asserts that full administrative expenses, as opposed to the 3½% actually charged, should have been assessed against the deed of trust noteholders.

## ASSESSMENT OF ADMINISTRATIVE COSTS

The question of what costs and expenses should be assessed against secured lien creditors has produced seemingly inconsistent answers which are discussed in Annot., 48 A.L.R.2d 1343 (1956). The Court of Appeals for the Fourth Circuit has addressed itself to the question on a number of occasions, and it was from these decisions that the Bankruptcy Judge arrived at his conclusion that 3½% should be deducted from the amount payable to the first and second deed of trust noteholders. These secured creditors have sought to distinguish the Fourth Circuit cases and cite additional authority to the effect that none of the administrative costs should be assessed against them.

In Tawney v. Clemson, 81 F.2d 300 (4th Cir. 1936), the court considered the propriety of charging against the pro-

---

1. The considerable lapse of time in selling the property—one year from entry of the *ex parte* restraining order against United Virginia Bank/Security National—was explained by the Bankruptcy Judge as having been due to circumstances surrounding the transfer of title and not due to the fault of the trustee or any other party.

ceeds of the sale of personal property subject to chattel mortgages a share of the expenses of the sale and of the commissions of the bankruptcy referee and trustee in the proportion which the proceeds of the mortgaged chattels bore to the proceeds of the property that was free from liens. The proceeds from the mortgaged property were sufficient to pay the mortgage debts, but after deducting the expenses, there was a balance remaining on the mortgages which was allowed to participate in the general estate only as an unsecured debt. The court upheld the decision to assess costs of the sale against the mortgagee in the following language:

"When the sale is made, as in the case at bar, with the lienholder's consent, it may fairly be inferred that it is made at least in part for his benefit; and there is nothing in the Bankruptcy Act and no equitable consideration which excuses a lienor, who seeks the aid of the bankruptcy court, from paying such part of the costs of the sale and of the expenses of administration as is attributable to the sale of the mortgaged property and the distribution of its proceeds. He is saved the costs of sale and the commissions or fees on the proceeds which would otherwise be incurred in foreclosure proceedings in the state court; and he is properly chargeable with the corresponding expenses of the sale in the federal court undertaken at his request or with his consent in conformity with the Bankruptcy Act." 81 F. 2d at 304.

Four years later in Byrer v. Bushong, 108 F.2d 594 (4th Cir. 1940) the court considered the case in which mortgaged real property was sold free of liens by the Bankruptcy Court and the proceeds, while sufficient to pay the mortgaged indebtedness, were insufficient to pay the principal and accrued interest. The court followed Tawney v. Clemson and allowed the taxes, expenses of the sale and costs of the proceedings to be paid from the proceeds of the sale. As in *Tawney* the mortgaged creditors had sought the sale by the Trustee in Bankruptcy.

In Textile Banking Co. v. Widener, 265 F.2d 446 (4th Cir. 1959), Textile had a factor's lien on all of the bankrupt's inventory and accounts receivable and had petitioned the Bankruptcy Referee to foreclose on its lien on the inventory. This petition was denied, and over Textile's objection, the Trustee in Bankruptcy was ordered to sell the property free of liens. The property was sold for considerably less than the debt secured by the lien, and from the proceeds the Referee had deducted $3,775.92 for expenses "incident to the protection of the furniture pending the sale, the advertising costs, and other miscellaneous expenses incident to the sale . . .". The Referee further ordered that an additional $1,600.00 be deducted as costs. Textile acquiesced in the deduction of $3,775.92 but assigned as error the additional $1,600.00 which the Referee had charged as representing the amount it would have cost the creditor to enforce his lien in the state court. The court remanded the case for reconsideration of the $1,600.00 charge since it was not clear as to what costs of the sale the $1,600.00 applied and whether there was a legitimate item of costs not covered by the $3,775.92. The court did not cite the cases of Tawney v. Clemson and Byrer v. Bushong in reaching this result but did express the rule to be applied.

"We believe the correct rule to be that the security can be charged with the expense *actually* incurred by the Trustee in making the sale; with the proviso, however, that this cost must not exceed what it would cost the creditor to proceed in the State court." (emphasis in original). 265 F.2d at 454.

It is noteworthy that in *Widener* there was no surplus realized over the single secured debt, but the opinion indicates that if there were a surplus, then the expenses would have to be realized from it.

"But where the Trustee has elected to sell the encumbered property he cannot entrench upon the amount of the

secured debt for the payment of any of the expenses of administration, such as commissions and similar costs. Such costs can be taken only out of any surplus realized over and above the amount necessary to pay the secured debt." 265 F.2d at 453.

These cases from the Fourth Circuit do not appear to be completely dispositive of the case at bar, and demonstrate that various equitable considerations are to be weighed in reaching a just result. In Annot. 48 A.L.R.2d 1343 at 1345 the author states:

"Since the Bankruptcy Act contains no provision directly on point, the question of what expenses of the sale of a lien creditor's security free from liens may be charged to the lien creditor is determined under the broad equitable powers of the Bankruptcy Court. There are no firm rules which can be laid down on this question, every case depending on its own peculiar equities."

■ In the factual context of the present case the equitable considerations do not support the Bankruptcy Judge's result. Initially, it is noted that the property should not have been sold free of liens for it is well established that where it is reasonably certain that no equity will be realized for the benefit of the general estate from the sale of encumbered property, then the Bankruptcy Judge should not order its sale free of liens. Federal Land Bank of Baltimore v. Kurtz, 70 F.2d 46 (4th Cir. 1934). In the case at bar the Bankruptcy Judge restrained the foreclosure sale by way of an *ex parte* order on the eve of the sale, and no hearing was subsequently held to consider the propriety of this action. It is clear that had the sale been consummated by the Trustee under the second deed of trust, both the first and second deed of trust noteholders would have reduced their security to cash a year before the Trustee in Bankruptcy finally sold the property. It also seems probable that the foreclosure sale would have realized enough cash to cover the principal and interest due the first and second deed of trust noteholders as well as the expenses of the foreclosure sale—all of which were secured by the deeds of trust. The unnecessary one-year delay has certainly not benefited the deed of trust noteholders in this case.

■■ The Bankruptcy Judge was of the opinion that the expenses of the Referee's Salary and Expense Fund should not be borne in full by the subordinate lien creditors but should also be apportioned against the deed of trust noteholders. Such a result ignores the preferences held by the deed of trust noteholders, and in this case has no equitable considerations to recommend it. The deed of trust noteholders did not petition the court to sell the property as was done in Byrer v. Bushong, nor was there an agreement with the Trustee in Bankruptcy as in Tawney v. Clemson. Although there was no formal objection to the sale as in Textile Banking Co. v. Widener, neither was there consent to the sale, and it is clear that any benefit which resulted from the sale by the Trustee in Bankruptcy flowed to the statutory lienors and not the deed of trust noteholders. Had the foreclosure sale been allowed to proceed under the provisions of the second deed of trust the expenses of foreclosure, including a trustee's commission of 5% would have been taken from the proceeds thus reducing the funds available to the subordinate lienors. The sale of the property in this case was not undertaken at the instigation of the deed of trust noteholders nor does it appear to have benefited them. In such a case, the broad principles set forth in Textile Banking Co. v. Widener, supra, requires that the secured debts not be entrenched upon other than in the order of their priority. This of course places the burden of the expenses of the bankruptcy proceedings on the subordinate statutory lienors, but such a result is consistent with that which would have occurred without the intervention of the Trustee in Bankruptcy and finds support in numerous decisions. e. g. In re Street, 184 F.2d 710

(3rd Cir. 1950); Reconstruction Finance Corporation v. Cohen, 179 F.2d 773 (10th Cir. 1950); Oppenheimer v. Oldham, 178 F.2d 386 (5th Cir. 1949). Accordingly, on remand of this case the Bankruptcy Judge in assessing the costs of the bankruptcy proceedings against the proceeds realized from the sale of the encumbered property should deduct such costs and then apply the remaining proceeds to the liens in the order of their priority.

## POST-BANKRUPTCY INTEREST

In Littleton v. Kincaid, 179 F.2d 848 (4th Cir.), cert. denied, 340 U.S. 809, 71 S.Ct. 38, 95 L.Ed. 595 (1950) the court considered whether post-bankruptcy interest was payable on mortgage notes in a situation in which the assets of the bankrupt proved to be more than sufficient to pay all of the claims against the estate. Because a surplus was generated the court held that there would be no inequality in allowing interest on the funds until the creditor was actually paid. In the case at bar the Bankruptcy Judge relied on dictum in the above case for the proposition that in some circumstances interest is not payable on funds received by the Trustee after the sale of the property i. e. funds in *custodia legis*. But the court in *Littleton* merely recognized the "inequality which would otherwise result in the forced distribution in receivership to debts carrying different rates of interest" citing the case of American Iron and Steel Manufacturing Co. v. Seaboard Air Line, 233 U.S. 261, 266, 34 S.Ct. 502, 58 L.Ed. 949 (1914) wherein it was stated "as a general rule, after property of an insolvent is in *custodia legis* interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property." 233 U.S. at 266, 34 S.Ct. at 504. But the Supreme Court went on to state that if the estate proved to be solvent then both principal and interest should be paid in full and further stated:

"The principle [that creditors are entitled to interest accruing during re-

ceivership] is not limited to cases of technical bankruptcy, where the assets ultimately prove sufficient to pay all debts in full, but principal as well as interest, accruing during a receivership, is paid on debts of the highest dignity, even though what remains is not sufficient to pay claims of a lower rank in full." 233 U.S. at 267, 34 S. Ct. at 505.

Thus the dictum of Littleton v. Kincaid, particularly when considered in light of American Iron and Steel Co. v. Seaboard Air Line, is scant authority for the result reached by the Bankruptcy Judge.

In United States v. Harrington, 269 F.2d 719 (4th Cir. 1959) the court rejected the claim of the United States for post bankruptcy interest on its tax lien against the bankrupt estate. The court noted that there were two exceptions to the principle that interest upon claims stops with the initiation of bankruptcy proceedings, to wit: (1) Where the bankrupt ultimately proves to be solvent; and (2) where securities held by the creditor, themselves produce income after the filing of the petition. The court rejected the government's contention that there should be a third exception in the case of a secured creditor where the amount of his security is sufficient to satisfy both principal and interest on the secured claim, but in so doing, recognized the distinction between a tax lien, as in the case before it, and a contractual lien such as a mortgage or deed of trust.

"The justification for this allowance to mortgagees, etc., would seem to be that when the creditor extended credit, he relied upon the particular security given as collateral to secure both the principal of the debt and interest until payment and, if the collateral is sufficient to pay him, the contract between the parties ought not be abrogated by bankruptcy. This rationale has no application to tax liens." 269 F.2d at 724.

The opinion in *Harrington* is narrowly limited to disallowing interest on statutory liens, and the court was apparently

aware of an exception to the rule against post bankruptcy interest for contractual debts as in the case at bar.

"As we have seen, the instances where post-bankruptcy interest has been allowed a creditor with sufficient security are narrowly restricted. We are not prepared, in any event, to extend such 'exception' beyond the area of contractual debts to statutory liens on all of the bankrupt's property." 269 F.2d at 724.

The Bankruptcy Judge was of the opinion that preferred creditors whose obligations bear a high rate of interest should not be allowed to drain funds from creditors whose obligations bear a lower rate of interest or from general creditors during the bankruptcy proceedings since such proceedings were not due to the fault of any creditor. He nevertheless felt that *Littleton* stated the rule to be applied and that claims against the bankrupt estate should bear interest only until the funds were in *custodia legis*. But, as has been noted, the holding in *Littleton* allowed interest until payment, and the dictum therein with respect to funds in *custodia legis* would not appear to affect the rights of preferred creditors. In any case, if the concern is that of protecting the claims of subordinate or general creditors during the pendency of the bankruptcy proceedings, then the general rule that no interest should accrue after the filing of the petition in bankruptcy would seem to apply.

The leading case allowing post-bankruptcy interest to a secured creditor (mortgagee) is Coder v. Arts, 152 F. 943, 950 (8th Cir. 1907), aff'd, 213 U.S. 223, 245, 29 S.Ct. 436, 53 L.Ed. 772 (1909) in which the court of appeals reasoned as follows:

"By the terms of the note and mortgage the mortgagor agreed to pay interest on his debt until it was paid, and that the mortgaged lands might be sold by the mortgagee, and that their proceeds might be applied to the payment of this debt and interest.

The covenant for the sale and the application of the proceeds of these lands to the payment of the debt and interest was valid and binding and it ran with the land, so that when the latter came to the hands of the trustee it was mortgaged for the payment of the interest as much as for the payment of the principal, and the proceeds of its sale necessarily came to his possession subject to the same charge." 152 F. at 950.

In Oppenheimer v. Oldham, 178 F.2d 386 at 389 (5th Cir. 1949), the court allowed interest to the date of payment to a secured creditor stating:

"It has always been a fundamental principle of the bankruptcy law that the property rights and interests designated as liens and pledges, when valid in bankruptcy, shall not be impaired in the administration of a bankrupt estate."

Other cases have reached the same result, e. g. Jefferson Standard Life Insurance Co. v. United States, 247 F.2d 777 (9th Cir. 1957); Palo Alto Mutual Savings and Loan Association v. Williams, 245 F.2d 77 (9th Cir. 1957); Castaner v. Nora, 234 F.2d 710 (1st Cir. 1956); In re Macomb Trailer Coach, 200 F.2d 611 (6th Cir. 1952); United States v. Sampsell, 153 F.2d 731 (9th Cir. 1946); In re Schrader Body, Inc. 315 F.Supp. 1349 (W.D.Pa.1970). In the case at bar, the first and second deed of trust notes secured the interest until paid, and this court is of the opinion that these notes should be given effect according to their terms. This court is aware that equitable principles of bankruptcy administration govern the payment of interest accruing during administration. 3A Collier on Bankruptcy, § 63.16 at 1863 (14th ed.). But on the facts of this case, the court does not perceive any equitable considerations which would deny the deed of trust noteholders interest on their secured debt until payment according to the terms of the notes.

United Virginia Bank/Security National has raised the claim that it is entitled to attorney fees of 18% as provided in the deed of trust and also the costs it incurred in attempting to sell the property before the *ex parte* restraining order by the Bankruptcy Court. These issues were not set forth in the certificate of the Bankruptcy Judge and apparently have not been considered below. These issues should be presented to the Bankruptcy Judge for decision in the first instance and thus will not be decided at this time. This case is remanded in order that the proceeds from the sale of the subject property may be disbursed among the creditors in a manner consistent with this opinion, and at that time the Bankruptcy Judge may consider the issues of attorney fees and costs of the attempted sale by United Virginia Bank/Security National.